**In re Jose Orlando MATUS, Jr., Debtor.**

**Eastern Diversified Distributors, Inc., Plaintiff,**

**v.**

**Jose Orlando Matus, Jr., Defendant.**

**Bankruptcy No. 02–93358–CRM.**

**Adversary No. 02–9303–CRM.**

United States Bankruptcy Court,

N.D. Georgia, Atlanta Division.

Jan. 21, 2004.

Brian B. Pastor, Pastor Law Group, Atlanta, GA, for Plaintiff.

John A. Roberts, Melanie Webre, The Roberts Law Firm, Atlanta, GA, for Defendant.

*ORDER*

C. RAY MULLINS, Bankruptcy Judge.

**THIS MATTER** is before the Court on the Adversary Proceeding (the "Complaint") filed by Eastern Diversified Distributors, Inc. ("Eastern Diversified" or the "Plaintiff"). The Plaintiff seeks to deny a discharge to Jose Orlando Matus, Jr., the debtor in the above-styled bankruptcy case ("Matus" or the "Debtor"), pursuant to 11 U.S.C. §§ 727(a)(2), (a)(4)(A), and (a)(4)(D) (the "Bankruptcy Code"). The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(J). A trial on the Complaint was held on October 30, 2003. The Court has considered the pleadings, briefs, and other documents submitted by the parties, as well as the testimony elicited at the trial. The Court concludes that the Debtor is not entitled to a discharge.

## I. FACTUAL BACKGROUND

The Debtor is represented by John A. Roberts of The Roberts Law Firm ("Roberts" or "Counsel").[1] Roberts also represents the Debtor in *Eastern Diversified Services, Inc. d/b/a/ Premier Brass v. Jose Matus and JM Diversified Distributors, Inc.* (Civil Action No. 01CV4818–6), in the Superior Court of DeKalb County, Georgia (the "DeKalb County action"). On January 17, 2002, Counsel filed a Notice of Suggestion of Bankruptcy (the "Notice of Bankruptcy") in the DeKalb County action. In March 2002, Counsel prepared a quitclaim deed (the "original deed") transferring the Debtor's undivided full interest in the Debtor's residence located in DeKalb County, Georgia, to his wife, Kelly

---

1. Melanie Webre, an associate of The Roberts Law Firm, also represents the Debtor in this adversary proceeding. However, Roberts is the bankruptcy attorney of record. During several court appearances, Roberts made it clear that Ms. Webre is only handling discovery issues.

Tanner Matus. The original deed was recorded in the DeKalb County records on March 4, 2002.

On March 28, 2002, the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code, *two months* after Roberts prepared and filed the Notice of Bankruptcy and three weeks after the Debtor purportedly conveyed his interest his residence to his wife. The petition was signed by the Debtor and Roberts. On the petition date, the Debtor did not file Schedules A–J and the Summary of Schedules (collectively, the "Schedules"), or the Statement of Financial Affairs as mandated by section 521(1) of the Bankruptcy Code and Rule 1007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Debtor also failed to file the Attorney Disclosure Statement required by section 329(a) of the Bankruptcy Code and Rule 2016 of the Bankruptcy Rules (the "2016 Statement").

On April 4, 2002, the Debtor filed a Motion for Extension of Time to File Schedules and Statement of Affairs. Counsel indicated that due to the large number of creditors, an extension was necessary "in order for [the Debtor] to accurately complete and file with the Court his Schedules and Statement of Financial Affairs." The Court granted the request, and extended the time for filing until April 17, 2002. Instead of filing the required papers on April 17, 2002, Roberts prepared an Amended Quitclaim Deed (the "amended deed") to correct the legal description of the real property described in the original deed, and then had the amended deed recorded in DeKalb County. The Debtor did not seek Court approval, nor was the Chapter 7 Trustee, Tamara Ogier (the

"Trustee"), advised of this postpetition transfer.

On April 18, 2002, the Debtor filed his Statement of Financial Affairs, declaring "under penalty of Perjury that [the Debtor] read the answers contained in the foregoing statement of financial affairs and any attachments thereto and that they are true and correct to the best of [his] knowledge information, and belief." [2] The Debtor also filed his Schedules on April 18, 2002. Notably, the 2016 Statement was not filed.

On May 23, 2002, the section 341 meeting of creditors (the "meeting of creditors") was held. Although the Debtor made one voluntary admission (that he had an IRA valued at approximately $15,000), it was only after being questioned by the Trustee and Plaintiff's Counsel that he disclosed several omissions and acknowledged numerous inaccuracies in his Schedules and Statement of Financial Affairs. *See* Table 1—Debtor's Filings and Admissions.

On June 7, 2002, the Debtor filed, under penalty of perjury, the Amendment to Schedules and Statement of Financial Affairs (the "first amendments"). The first amendments were filed to address omissions and misrepresentations discovered through the examination of the Debtor at the meeting of creditors. On August 29, 2002, the Debtor filed a second Amendment to Schedules and Statement of Financial Affairs (the "second amendments"). The Debtor submitted a notarized Verification, duly swearing that the facts contained in the second amendments were true and correct.

On October 29, 2003, one day before the trial on the Complaint, the Debtor filed the

---

2. The Statement of Financial Affairs notes under the Debtor's signature that the penalty for making a false statement is a fine of up to $500,000 and/or imprisonment for up to five years pursuant to 18 U.S.C. §§ 152, 3571.

third Amendment to Schedules (the "third amendments"), attaching a notarized Verification affirming their veracity.

On October 31, 2003, the Court entered an Order directing Roberts to file the 2016 Statement. On November 13, 2003, Roberts filed the fourth Amendment to Sched-ules (the "fourth amendments"), along with the 2016 Statement. However, the Debtor's Verification was not filed with the 2016 Statement.

The following chart summarizes the Debtor's filings and admissions:

TABLE 1—DEBTOR'S FILINGS AND ADMISSIONS

| Schedules and Statement of Financial Affairs | Initial Filing After Deadline 04/18/03 | Meeting of Creditors 05/23/02 | First Amendments 06/07/02 | Second Amendments 08/29/02 | Third Amendments 10/29/03 |
|---|---|---|---|---|---|
| Statement of Financial Affairs #1 | The Debtor listed no current income and no income for the preceding two years. | The Debtor testified that he did not include his income for the year 2000. He also attested that he did not have an income in 2001 or 2000. *See* 341 Tr. 5. He later admitted to "taking" $7,000 or $8,000 in income from the business in 2002 and $30,000–35,000 in 2001. *See* 341 Tr. 15–16. | The Debtor listed a monthly income of $2,708.33; the Debtor was paid wages of $102,348 in 2000, $27,783 in 2001, and $13,450 in 2002. | | |
| Statement of Financial Affairs #2 | The Debtor did not list any gifts. | After being questioned by the Trustee and the Plaintiff, the Debtor testified that he received family gifts to pay monthly expenditures. *See* 341 Tr. 10, 19. | The Debtor listed a family gift in the amount of $7,000. | | |
| Statement of Financial Affairs #7 | The Debtor listed a gift to his wife of a one-half ownership in his residence. | After being questioned by the Trustee, the Debtor admitted to transferring his undivided full interest in real property to his wife when he was insolvent. *See* 341 Tr. 7–8. | | | |
| Statement of Financial Affairs #10 | The Debtor did not list any transfers. | After being questioned by the Trustee, the Debtor admitted to transferring his undivided full interest in real property to his wife when he was insolvent. *See* 341 Tr. 7–8. | | | |

| Schedules and Statement of Financial Affairs | Initial Filing After Deadline 04/18/03 | Meeting of Creditors 05/23/02 | First Amendments 06/07/02 | Second Amendments 08/29/02 | Third Amendments 10/29/03 |
|---|---|---|---|---|---|
| Statement of Financial Affairs # 18 | The Debtor did not list any businesses; no reference was made to his 100% ownership of and control over J.M. Diversified Distributors, Inc., ("J.M. Diversified") or that J.M. Diversified had assets. | The Debtor claimed he was "not sure" of the financial status of J.M. Diversified though he was President and chief Salesperson. The Debtor testified that J.M. Diversified had approximately $300,000 in gross sales in 2001. *See* 341 Tr. 17. | The Debtor listed information about J.M. Diversified. | | |
| Statement of Financial Affairs # 19–25 | Items # 19–25 were missing. | After being questioned by the Plaintiff, the Debtor admitted to having an accountant. The Debtor claimed he was "not sure" of the financial status of J.M. Diversified though he was President and chief Salesperson. The Debtor did testify that J.M. Diversified had assets. *See* 341 Tr. 17–18. | In Item # 19, the Debtor listed information about the accountant who prepared his personal and J.M. Diversified's tax returns and financial records from 1998–2002; in Item # 21, the Debtor listed information about J.M. Diversified. | | |
| Schedule A | The Debtor listed a joint, equitable one-half interest in real property valued at $175,000. | After being questioned by the Trustee, the Debtor admitted that he transferred his interest in real property to his wife. *See* 341 Tr. 7–8. There was some discussion about the value of the Debtor's home. *See* 341 Tr. 14–15. | The Debtor listed the value of real property as $191,000 (which was valued by the Trustee's appraiser at $215,000); he did not amend the joint, equitable one-half interest. | | |
| Schedule B # 2 | The Debtor failed to list his personal bank account. | After being questioned by the Trustee, the Debtor admitted that he had a personal checking account. *See* 341 Tr. 20. | The Debtor listed his personal checking account. | | |
| Schedule B # 11 | The Debtor failed to list his IRA. | The Debtor disclosed his IRA valued at approximately $15,000. *See* 341 Tr. 4. | The Debtor listed his IRA ($15,000 value). | | The Debtor removed his IRA from Schedule B. |

| Schedules and Statement of Financial Affairs | Initial Filing After Deadline 04/18/03 | Meeting of Creditors 05/23/02 | First Amendments 06/07/02 | Second Amendments 08/29/02 | Third Amendments 10/29/03 |
|---|---|---|---|---|---|
| Schedule B # 12 | The Debtor failed to list his stock in J.M. Diversified. | After being questioned by the Plaintiff, the Debtor testified that he did not list his ownership of J.M. Diversified. The Debtor claimed he was "not sure" of the financial status of business though he was President and chief Salesperson. *See* 341 Tr. 17, 22. | The Debtor listed stock in J.M. Diversified (no value). | | |
| Schedule B # 20 | | | | | The Debtor listed two Abusive Litigation Claims. |
| Schedule B # 21 | | | | | The Debtor listed a November 2002 Patent. |
| Schedule E | The Debtor failed to list his IRA. | The Debtor disclosed his IRA valued at approximately $15,000. *See* 341 Tr. 4. | The Debtor listed his IRA. | | |
| Schedule I | The Debtor disclosed that he worked for J.M. Diversified for one year; he failed to include his current income. | The Debtor testified that he did not include his income for the year 2000. He also attested that he did not have an income in 2001 or 2000. *See* 341 Tr. 5. But then he later admitted to "taking" $7,000 or $8,000 in income from the business in 2002 and $30,000–35,000 in 2001. *See* 341 Tr. 15–16. | The Debtor amended his monthly income from $0.00 to $2,708.33. He also changed the length of his employment with J.M. Diversified from one year to one and one-half years. | | |
| Schedule J | | The Debtor was questioned about his expenses. *See* 341 Tr. 10–11. | The Debtor made various changes to Schedule J in regards to food, medical/dental, and health expenses. | | |

## II. DISCUSSION

One of the fundamental goals of the Bankruptcy Code is to relieve the "honest but unfortunate debtor" of his indebtedness, allowing him to make a financial "fresh start." *Local Loan Co. v. Hunt*, 292 U.S. 234, 244–45, 54 S.Ct. 695, 78 L.Ed. 1230 (1934); *In re Haas*, 48 F.3d

1153, 1156 (11th Cir.), *cert. denied,* 515 U.S. 1142, 115 S.Ct. 2578, 132 L.Ed.2d 828 (1995); *Equitable Bank v. Miller (In re Miller),* 39 F.3d 301, 304 (11th Cir.1994); *Murphy & Robinson Inves. Co. v. Cross (Matter of Cross),* 666 F.2d 873, 879–80 (5th Cir.1982). The United States Supreme Court has stated:

> that a central purpose of the Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy "a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." But in the same breath that we have invoked this "fresh start" policy, we have been careful to explain that the Act limits the opportunity for a completely unencumbered new beginning to the "honest but unfortunate debtor."

*Grogan v. Garner,* 498 U.S. 279, 286–87, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (internal quotations and citations omitted).

■■■ This fresh start is primarily accomplished through the discharge of debt. *See* S. REP. NO. 95–989, at 7 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5793 (section 727 is central to the fresh start policy). Generally, a chapter 7 debtor receives a complete discharge from most prepetition debts pursuant to section 727(b) of the Bankruptcy Code.[3] Nonetheless, "[t]here is no constitutional right to obtain a discharge in bankruptcy ... [It] is a legislatively created benefit ...." *United States v. Kras,* 409 U.S. 434, 446, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973); *Siegel v. Weldon (In re Weldon),* 184 B.R. 710, 712 (Bankr.D.S.C.1995) (discharge is not a right, but rather a statutory privilege for honest debtors) (citing *Hazelip v. Hor-*

ridge *(In re Horridge),* 127 B.R. 798, 799 (S.D.Tex.1991)). For example, Congress has, through section 523 of the Bankruptcy Code, excepted certain debts from discharge. Further, section 727(a) of the Bankruptcy Code may be utilized to deny a discharge to dishonest debtors, however unfortunate. S. REP. NO. 95–989, at 7 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5793. Though the Bankruptcy Code provides most debtors with a fresh start, the Code prevents dishonest debtors from improperly using it as a shield. *Posillico v. Bratcher (In re Bratcher),* 289 B.R. 205, 213 (Bankr.M.D.Fla.2003); *Royer v. Smith (In re Smith),* 278 B.R. 253, 257 (Bankr. M.D.Ga.2001). While the Bankruptcy Code does not expressly require that a debtor file and prosecute the bankruptcy case in good faith, good faith and candor are necessary prerequisites to obtaining a discharge. *Buckeye Ret. Co. v. Heil (In re Heil),* 289 B.R. 897, 903 (Bankr.E.D.Tenn. 2003) (citing *Indus. Ins. Servs., Inc. v. Zick (In re Zick),* 931 F.2d 1124, 1129 (6th Cir.1991)). *See also Buckstop Lure Co. v. Trost (In re Trost),* 164 B.R. 740, 749 (Bankr.W.D.Mich.1994) (debtor must be fair and honest with the court and make full and accurate disclosures in all filings).

Section 727(a) provides in pertinent part:

> (a) The court shall grant the debtor a discharge, unless—
>
> ...
>
> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted

---

**3.** Section 727(b) provides: "Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter ...." 11 U.S.C. § 727(b).

to be transferred, removed, destroyed, mutilated, or concealed—

 (A) property of the debtor, within one year before the date of the filing of the petition; or

 (B) property of the estate, after the date of the filing of the petition;

. . .

(4) the debtor knowingly and fraudulently, in or in connection with the case—

 (A) made a false oath or account;

. . . .

 (D) withheld from an officer of the estate entitled to possession under this title any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs

. . . .

11 U.S.C. § 727.

 A denial of a discharge is an extraordinary remedy and therefore, statutory exceptions to discharge must be construed liberally in favor of the debtor and strictly against the objecting party. *Miller*, 39 F.3d at 304 (the denial of a discharge must be predicated on real and substantial evidence, not conjecture); *St. Laurent v. Ambrose (In re St. Laurent)*, 991 F.2d 672, 680 (11th Cir.1993); *Smith*, 278 B.R. at 257; *Overly v. Guthrie (In re Guthrie)*, 265 B.R. 253, 263 (Bankr. M.D.Ala.2001); *Hunerwadel v. Dulock (In re Dulock)*, 250 B.R. 147, 153 (Bankr. N.D.Ga.2000); *Dawson v. Cutts (In re Cutts)*, 233 B.R. 563, 570 (Bankr.M.D.Ga. 1999); *Dana Fed. Credit Union v. Holt (In re Holt)*, 190 B.R. 935 (Bankr.N.D.Ala. 1996).

 The party objecting to discharge bears the burden of establishing grounds for denial of discharge. Fed. R. Bankr.P. 4005. However, as noted in the Advisory Committee Notes, Rule 4005 of the Bank-

ruptcy Rules does not address the burden of going forward with the evidence. The Bankruptcy Code, including its legislative history, is also silent regarding the standard of proof required to sustain that burden. Consequently, courts considering the standard under section 727(a) were split between the use of the preponderance of the evidence or clear and convincing evidence standards. In 1986, the Eleventh Circuit, in construing the section 523(a)(2)(A) exception to discharge, adopted the clear and convincing evidence standard. *See Schweig v. Hunter (In re Hunter)*, 780 F.2d 1577, 1579 (11th Cir. 1986). Subsequently, the United States Supreme Court ruled in *Grogan v. Garner* that a preponderance of the evidence standard applies in section 523(a) dischargeability proceedings, overruling the Eleventh Circuit's application of the clear and convincing evidentiary standard. 498 U.S. at 291, 111 S.Ct. 654. As a result, many courts have concluded that the preponderance of the evidence standard is also appropriate for section 727 actions. *In re Keeney*, 227 F.3d 679 (6th Cir.2000); *In re Scott*, 172 F.3d 959 (7th Cir.1999); *In re Brown*, 108 F.3d 1290 (10th Cir.1997); *Farouki v. Emirates Bank Int'l Ltd.*, 14 F.3d 244 (4th Cir.1994); *Dulock*, 250 B.R. at 153 (plaintiff must prove by a preponderance of the evidence that the debtor is not entitled to a discharge); *Holt*, 190 B.R. at 940. *See also Walton v. Staub (In re Staub)*, 208 B.R. 602, 605 (Bankr.S.D.Ga. 1997) (U.S. Trustee proved by a preponderance of the evidence that the debtor should be denied a discharge). Moreover, "[t]he grounds for denial of discharge must be proven specifically, and the proof must be directed at the transfer or concealment alleged. A debtor should not be denied a discharge on 'general equitable considerations.'" *Dulock*, 250 B.R. at 153 (citing

*Rice v. Matthews,* 342 F.2d 301, 304 (5th Cir.1965)).

Once the plaintiff meets the initial burden by producing evidence establishing the basis for his objection, the burden shifts to the debtor to satisfactorily explain the loss. *Chalik v. Moorefield (In re Chalik),* 748 F.2d 616, 619 (11th Cir.1984). *See generally Grogan,* 498 U.S. at 285–91, 111 S.Ct. 654; *Hawley v. Cement Indus., Inc. (In re Hawley),* 51 F.3d 246, 249 (11th Cir.1995); *Miller,* 39 F.3d at 306–07. Thus, the debtor has the ultimate burden of persuasion, demonstrating that he is entitled to a discharge despite the evidence presented by the objecting party. *Bratcher,* 289 B.R. at 217 (the debtor must bring forth enough credible evidence to overcome the objection); *Shappell's Inc. v. Perry (In re Perry),* 252 B.R. 541, 547 (Bankr.M.D.Fla.2000); *Law Offices of Dominic J. Salfi, P.A. v. Prevatt (In re Prevatt),* 261 B.R. 54, 58 (Bankr.M.D.Fla. 2000).

## A. SECTION 727(a)(2)

To sustain an objection under section 727(a)(2) of the Bankruptcy Code, the moving party must show (i) that the act complained of was executed within one year before the date of the filing of the petition, (ii) that the act was executed with actual intent to hinder, delay or defraud a creditor or an officer of the estate charged with custody of property under the Bankruptcy Code, (iii) that the act was that of the debtor or a duly authorized agent of the debtor, and (iv) that the act consisted of transferring, removing, destroying or concealing any of the debtor's property, or permitting any of these acts to be executed. 6 Lawrence P. King et al., Collier on Bankruptcy ¶ 727.02 (15th ed.2003). Essentially, the provision mandates that the objecting party demonstrate (i) a transfer or concealment of property of the debtor

or estate, (ii) improper intent, and (iii) an improper act that occurred either during the one year preceding the filing or post-petition.

The element of intent is perhaps the most difficult to prove. A plaintiff bears the burden of demonstrating actual fraudulent intent; constructive fraud is insufficient. *Miller,* 39 F.3d at 306. *See In re Wines,* 997 F.2d 852, 856 (11th Cir. 1993); *Future Time, Inc. v. Yates,* 26 B.R. 1006, 1007–08 (M.D.Ga.), *aff'd,* 712 F.2d 1417 (11th Cir.1983). However, because a debtor is unlikely to admit his fraudulent intent, a finding of actual intent may be based on circumstantial evidence or inferred from the surrounding facts and circumstances. *Smith,* 278 B.R. at 257; *Dulock,* 250 B.R. at 153. *See Future Time, Inc.,* 26 B.R. at 1007 ("Rarely, if ever, has a debtor taken the witness stand and testified under oath that yes, he transferred the property in question with the intent to hinder, delay or defraud his creditors."). A single wrongful act or omission may be sufficient to prove actual intent, however, evidence of a pattern of wrongful behavior presents a stronger case. *Smith,* 278 B.R. at 258 (citing *Hunter v. Sowers (In re Sowers),* 229 B.R. 151, 157 (Bankr. N.D.Ohio 1998)).

Courts consider the following factors, commonly referred to as "badges of fraud," to determine the issue of fraudulent intent: (i) the lack of adequate consideration for the transfer; (ii) the family, friendship, or close relationship between the parties; (iii) the retention of possession, benefit, or use of the property in question by the debtor; (iv) the financial condition of the party sought to be charged prior to and after the transaction in question; (v) the conveyance of all of the debtor's property; (vi) the secrecy of the conveyance; (vii) the existence or cumulative effect of the pattern or series of transac-

tions or course of conduct after the incurring debt, onset of financial difficulties, or pendency or threat of suit by creditors; and (viii) the general chronology of the events and transactions under inquiry. *Fleet Securities, Inc. v. Vina (In re Vina)*, 283 B.R. 803, 808 (Bankr.M.D.Fla.2002) (citing *Painewebber, Inc. v. Gollomp (In re Gollomp)*, 198 B.R. 433 (S.D.N.Y.1996)); *Cutts*, 233 B.R. at 570; *Rouse v. Stanke (In re Stanke)*, 234 B.R. 449, 457 (Bankr. W.D.Mo.1999); *Cohen v. Pond (In re Pond)*, 221 B.R. 29, 33 (Bankr.M.D.Fla. 1998); *Harris v. Burrell (In re Burrell)*, 159 B.R. 365, 372 (Bankr.M.D.Ga.1993). After the plaintiff establishes a *prima facie* case, the burden shifts to the debtor to satisfactorily explain his conduct, and the explanation must be convincing. *Smith*, 278 B.R. at 257 (citing *Chalik*, 748 F.2d at 619).

█ The Debtor testified that he transferred his entire sole interest in his residence, for no consideration, to his wife three weeks before filing his bankruptcy petition, and again nineteen days after his filing.[4] The Debtor continued to live in the property after the conveyances. At trial, he admitted that Roberts drafted both deeds and that the amended deed was prepared to correct an error in the legal description. The Debtor never fully disclosed these transfers on his Schedules and Statement of Financial Affairs.[5] Moreover, despite several amendments to his Schedules and Statement of Financial Affairs, the Debtor disclosed only a joint, equitable, one-half interest in real property valued at $191,000. While the Debtor claims that he did not possess the requisite intent, the Court may infer it from the Debtor's actions. The Debtor testified that he wanted his wife "to own whatever [he] had in the event that something would happen to [him] ...." Tr. 33. Indeed, something was happening to the Debtor. The Debtor, represented by Roberts, was involved in litigation with the Plaintiff in the DeKalb County action. Moreover, the Debtor knew that bankruptcy was imminent, since Roberts filed the Notice of Bankruptcy in the DeKalb County action. After filing the Notice of Bankruptcy, Roberts assisted the Debtor in transferring his home to his wife for no consideration, not once, but twice. The Court finds that the Notice of Bankruptcy was filed to induce the Superior Court and the Plaintiff to believe that the Debtor filed bankruptcy, thereby invoking the automatic stay of section 362 of the Bankruptcy Code. The Debtor's conduct, with assistance from Roberts, mirrors several "badges of fraud." Accordingly, the discrepancies between the Debtor's original and amended Schedules and Statement of Financial Affairs as compared to his testimony at the meeting of creditors and during the trial establishes a *prima facie* case of fraudulent concealment of assets.

Since the Plaintiff has met its initial burden, the burden shifts to the Debtor to show that the transfers were not made with the intent to hinder, delay, or defraud creditors. The Court finds that the Debtor's testimony and the arguments of Roberts fail to adequately explain their egregious conduct. The Debtor contends that the transfers were not fraudulent because ultimately no creditor was injured, since there was no reduction in the assets avail-

---

4. Consequently, both section 727(a)(2)(A), property of the debtor transferred within one year before the date of the filing, and section 727(a)(2)(B), property of the estate, are applicable.

5. Although the Debtor listed a gift to his wife as one-half ownership in the property in Item # 7 of his Statement of Financial Affairs, the Debtor did not disclose any transfers in Item # 10.

able to creditors. Roberts repeatedly argued that "the [Debtor's] property [was always] in the breast of this Court" because the Debtor "voluntarily" disclosed the transfer, and the property was "voluntarily" transferred to the Trustee. Tr. 53. However, the Debtor divulged the transfer only after being examined by the Trustee and Plaintiff's Counsel at the meeting of creditors. Moreover, the Debtor admitted that the Trustee "threatened"[6] to file an adversary proceeding against the Debtor's wife if she did not reconvey the property. Contrary to the Debtor's assertions, his true interest in the property was only discovered as a result of diligent investigation. Although the persistent efforts of the Trustee and Plaintiff's Counsel are laudable, "neither the trustee nor the creditors should be required to engage in a laborious tug of war to drag the simple truth into the glare of daylight." *Bratcher*, 289 B.R. at 218. All debtors are responsible for the complete disclosure of financial information, including transfers. Nonetheless, the fundamental inquiry is whether the debtor intended to hinder, delay, or defraud a creditor as proscribed by section 727(a)(2).[7] When the Debtor made the transfer to his wife, he obviously intended to conceal valuable property from the claims of his creditors.[8] After having the opportunity to observe the demeanor of the Debtor and assess his credibility, the Court finds that he possessed the actual intent to conceal assets in an attempt to defraud his creditors. The Plaintiff has shown by a preponderance of the evidence that the Debtor transferred property, both one year before filing his petition and after filing his petition, with the intent to hinder, delay, or defraud his creditors.

The transfer of the subject property back to the bankruptcy estate is irrelevant; it is the initial transfer and the Debtor's actual intent at that time which is crucial. *See Davis v. Davis (In re Davis)*, 911 F.2d 560, 561–62 (11th Cir.1990) (denying debtor's discharge despite the property being recovered prior to the filing of the bankruptcy because the debtor made a transfer with the intent of defrauding his creditors); *First Beverly Bank v. Adeeb (In re Adeeb)*, 787 F.2d 1339, 1345 (9th Cir.1986). A change of heart and a desire to undo a tainted transaction will not negate the disclosure failure and "somehow clean the debtor's hands." *Jensen v. Brooks (In re Brooks)*, 278 B.R. 563, 566 (Bankr.M.D.Fla.2002). To hold that there was no transfer of property with intent to hinder creditors merely because the property was reconveyed to the estate would condone the Debtor's wrongful conduct, contravene the purpose of section 727(a)(2), and violate the spirit and letter of the Bankruptcy Code. Since the Debtor transferred property, both one year before filing his petition *and* after filing his peti-

---

6. Roberts objected to the categorization of the situation as a "threat." Tr. 41. Black's Law Dictionary defines "threat" as "a communicated intent to inflict harm or loss on another or on another's property, esp. one that might diminish a person's freedom to act *voluntarily* or with lawful consent." Black's Law Dictionary 1489 (7th Ed.1999) (emphasis added). In this instance, where the Trustee informed the Debtor that she would file a lawsuit on behalf of the estate to regain possession of the property if the property was not reconveyed to the estate, usage of the term "threat" is most apropos.

7. There is no question as to whether a transfer occurred. *See* 11 U.S.C. § 101(54) (defining transfer as it applies in the context of section 727).

8. In his attempt to protect the property for his family, the Debtor must have realized that conveying the residence to his wife would hinder, delay, or defraud creditors. This is especially evident since he filed a false Notice of Bankruptcy and then made the transfer with full knowledge that he was going to later file for bankruptcy.

tion, with the intent to hinder, delay, or defraud his creditors, pursuant to section 727(a)(2)(A) and (B), he will not receive a discharge.

## B. SECTION 727(a)(4)

The Plaintiff also contends that Defendant's discharge should be denied under section 727(a)(4) of the Bankruptcy Code. This provision essentially codifies a fundamental policy of the Bankruptcy Code—that only honest, unfortunate debtors receive a discharge, and thus the benefit of a fresh start. The Debtor herein is neither honest nor unfortunate. Pursuant to section 521 of the Bankruptcy Code, debtors must: "file a list of creditors, and unless the court orders otherwise, a schedule of assets and liabilities, a schedule of current income and current expenditures, and a statement of the debtor's financial affairs," "cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties," and "surrender to the trustee any recorded information, including books, documents, records, and papers relating to property of the estate." The petition, schedules, and statement of financial affairs are executed under oath and penalty of perjury. Fed. R. Bankr.P. 1008; Official Form 1 (Voluntary Petition); Official Form 7 (Statement of Financial Affairs). *See Heil,* 289 B.R. at 907–08. *See also Hamo v. Wilson (In re Hamo),* 233 B.R. 718, 725 (6th Cir. BAP 1999); *Beaubouef v. Beaubouef (In re Beaubouef),* 966 F.2d 174, 178 (5th Cir. 1992). Moreover, a debtor testifies at the meeting of creditors under oath. 11 U.S.C. § 343; Fed. R. Bankr.P. 2003(c). The debtor must fully disclose all information relevant to the administration of the bankruptcy case. *Kentile Floors, Inc. v. Winham,* 440 F.2d 1128 (9th Cir.1971); *In the Matter of Garman,* 643 F.2d 1252 (7th Cir.1980). *See In re Robinson,* 292

B.R. 599 (Bankr.D.Ohio 2003); *Woolman v. Wallace (In re Wallace),* 289 B.R. 428 (Bankr.N.D.Okla.2003); *Fleet Securities, Inc. v. Vina (In re Vina),* 283 B.R. 803 (Bankr.M.D.Fla.2002); *In re Firrone,* 272 B.R. 213 (Bankr.N.D.Ill.2000); *In re Riccardo,* 248 B.R. 717 (Bankr.S.D.N.Y.2000). "It is not for the debtor to decide what is and is not relevant. A debtor who omits important information and fail[s] to make full disclosure, place[s] the right to the discharge in serious jeopardy." *Brooks,* 278 B.R. at 566. In fact, "[c]reditors are entitled to judge for themselves what will benefit, and what will prejudice, them" and the estate. *Chalik,* 748 F.2d at 618.

Section 727(a)(4) ensures that these absolute, unconditional obligations are fulfilled so that "those who seek the shelter of the Bankruptcy Code do not play fast and loose with their assets or with the reality of their affairs. The statutes are designed to insure that complete, truthful, and reliable information is put forward at the outset of the proceedings, so that decisions can be made by the parties in interest based on fact rather than fiction." *Bratcher,* 289 B.R. at 218 (quoting *Boroff v. Tully (In re Tully),* 818 F.2d 106, 112 (1st Cir.1987)). *See Armento v. Armento (In re Armento),* 127 B.R. 486, 490–91 (Bankr.S.D.Fla.1991). As the Eleventh Circuit has observed, "[t]he veracity of the bankrupt's statements is essential to the successful administration of the Bankruptcy Act." *Chalik,* 748 F.2d at 618; *accord In re Robinson,* 292 B.R. 599, 607–08 (Bankr.S.D.Ohio 2003) (debtor's disclosure obligations are part of the price paid for receiving a discharge) (quoting *In re Colvin,* 288 B.R. 477, 481 (Bankr. E.D.Mich.2003) and citing *Roudebush v. Sharp (In re Sharp),* 244 B.R. 889, 892 (Bankr.E.D.Mich.2000) (connection between obligation to file complete and accurate schedules is crucial to the fair admin-

istration of the case); *In re Hyde*, 222 B.R. 214, 219 (Bankr.S.D.N.Y.1998) (full disclosure is crucial to the integrity of the bankruptcy process); *In re Hogan*, 214 B.R. 882, 886 (Bankr.E.D.Ark.1997) (the bankruptcy system depends on the debtor's honesty); *United States v. Haught (In re Haught)*, 207 B.R. 269, 271 (Bankr. M.D.Fla.1997) (veracity of the debtor is vital for the effective administration of the estate)). The protection of the automatic stay and the discharge is not free, and one of the costs is the debtor's cooperation, including the accurate and full completion of the schedules and statement of financial affairs.[9] *See United States v. Craig (In re Craig)*, 252 B.R. 822, 829 (Bankr.S.D.Fla. 2000). When the debtor refuses to provide the requisite information, or when the debtor supplies incomplete or inaccurate information, the efficient administration of the bankruptcy estate is compromised.

### 1. SECTION 727(a)(4)(A)

■ A debtor will be denied a discharge pursuant to section 727(a)(4)(A) of the Bankruptcy Code if he knowingly and fraudulently made a false oath or account. The plaintiff bears the burden of proving that the false oath or account was made knowingly and fraudulently about a material matter. Fed. Bankr.R.P. 4005; *Swicegood v. Ginn*, 924 F.2d 230 (11th Cir.1991); *Chalik v. Moorefield*, 748 F.2d 616 (11th Cir.1984); *In re Raiford*, 695 F.2d 521 (11th Cir.1983); *Western Temporary Services, Inc. v. Day (Matter of Day)*, 1993 WL 734838 (Bankr.S.D.Ga.1993). *See also Sholdra v. Chilmark Financial, L.L.P. (In re Sholdra)*, 249 F.3d 380, 382 (5th Cir. 2001) (the plaintiff must prove: (i) that the debtor made a false statement under oath;

(ii) the statement was false; (iii) the debtor knew the statement was false; (iv) the debtor made the statement with fraudulent intent; and (v) the statement was material to the bankruptcy) (citing *Beaubouef*, 966 F.2d at 178); *Gullickson v. Brown (In re Brown)*, 108 F.3d 1290, 1294 (10th Cir. 1997). For a false oath to be considered material, it must be demonstrated that it "bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *Chalik*, 748 F.2d at 618 (citations omitted). Moreover, the false oath or account must be made with the requisite intent, specifically a knowing intent to defraud creditors. *Parnes v. Parnes (In re Parnes)*, 200 B.R. 710, 713–14 (Bankr.N.D.Ga.1996) (citing *Swicegood*, 924 F.2d at 232). *See Miller*, 39 F.3d at 306; *Wines v. Wines (In re Wines)*, 997 F.2d 852, 856 (11th Cir.1993); *Guthrie*, 265 B.R. at 264. However, actual intent may be inferred from circumstantial evidence. *Parnes*, 200 B.R. at 714 (citing *Ingersoll v. Kriseman (In re Ingersoll)*, 124 B.R. 116, 123 (M.D.Fla.1991) and *Butler v. Ingle (In re Ingle)*, 70 B.R. 979, 983 (Bankr. E.D.N.C.1987)); *Guthrie*, 265 B.R. at 262. The Court may infer fraud from a series or pattern of errors or omissions. *Parnes*, 200 B.R. at 714; *see also Crews v. Stevens (In re Stevens)*, 250 B.R. 750, 755 (Bankr. M.D.Fla.2000); *Behrman Chiropractic Clinics, Inc. v. Johnson*, 189 B.R. 985, 994 (Bankr.N.D.Ala.1995).

■ While false oaths or accounts may result in the denial of a discharge, deliberate omissions from schedules or the statement of financial affairs may also con-

---

9. One should not underestimate, nor take for granted, the privilege of discharge or the protection of the automatic stay. *See In re Russo*, 94 B.R. 127, 129 (Bankr.N.D.Ill.1988) (the automatic stay is one of the most powerful weapons known to the law); *Corning Vitro Corp. v. Shah (In re Shah)*, 169 B.R. 17, 20 (Bankr.E.D.N.Y.1994) (a discharge is not a right granted to all debtors).

stitute false oaths or accounts.[10] *Chalik*, 748 F.2d at 618; *Dulock*, 250 B.R. at 153. *See Heil*, 289 B.R. at 907–08 (knowledge that a statement is false can be proven by demonstrating that the debtor knew the truth, but failed to provide the information or provided contradictory information). Like misrepresentations, the omission must be (i) made knowingly and with fraudulent intent, and (ii) material to the bankruptcy case at issue. *Smith*, 278 B.R. at 259 (citing *Caldwell v. Horton (In re Horton)*, 252 B.R. 245, 248 (Bankr.S.D.Ga. 2000)).

A plaintiff must produce sufficient evidence to "give rise to a reasonable inference that the debtor failed to disclose information with the intent to hinder the investigation of the trustee and creditors." *Prevatt*, 261 B.R. at 59 (citing *Chalik*, 748 F.2d at 619). A plaintiff establishes a *prima facie* case by demonstrating that there are items which the debtor failed to disclose in his schedules or that the debtor falsely stated information in his schedules. *Smith*, 278 B.R. at 259; *Cutts*, 233 B.R. at 572. Detriment to the creditor or an intent to injure the creditor need not be shown. *Chalik*, 748 F.2d at 618. The burden then shifts to the debtor to overcome the inference with credible evidence and show that the misrepresentations and/or omissions were not made knowingly and fraudulently. *Smith*, 278 B.R. at 259; *Prevatt*, 261 B.R. at 59–60. *See Chalik*, 748 F.2d at 619. The debtor may not raise the defense that the omissions or misrepresentations were in regards to worthless assets. *Chalik*, 748 F.2d at 618.

The Plaintiff asserts that a number of omissions and misrepresentations in the original and amended Schedules and Statement of Financial Affairs

constitute material omissions and false oaths or accounts. The Plaintiff has presented sufficient evidence that the Debtor has omitted or misrepresented several items for the sole purpose of obscuring the assets of the estate. Specifically, the Debtor failed to disclose the transfer of his interest in his residence to his wife in Item # 10 of the Statement of Financial Affairs. He also misrepresented the gift of his ownership interest in the residence on Item # 7 of the Statement of Financial Affairs. In addition, the Debtor misstated or failed to account for the value of his stock in J.M. Diversified. While these are only a few omissions or misrepresentations, the Debtor filed several amendments to his Schedules and Statement of Financial Affairs after the meeting of creditors, the transcript of which was admitted into evidence. The Court's review of the transcript reveals that the Debtor only divulged the substantial majority of this information after being pressed by the Trustee and the Plaintiff's Counsel. The following items were added or amended:

1. The Debtor failed to list any income in Item # 1 on his original Statement of Financial Affairs and on Schedule I; the Debtor later listed his income for the current year, as well as his preceding wages and length of employment.

2. The Debtor failed to list any gifts in Item # 2 on his original Statement of Financial Affairs; the Debtor later listed the receipt of a family gift in the amount of $7,000.

3. The Debtor failed to reference his ownership and control of J.M. Diversified or that this company had assets on Item # 18 on his original Statement of Financial Affairs; the Debtor later provided information about the business.

**10.** "However, the discharge may not be denied when the untruth was the result of a mistake or inadvertence." *Dulock*, 250 B.R. at 152.

4. The Debtor did not include Items #19–25 on his original Statement of Financial Affairs; the Debtor later provided information about his accountant and his business, J.M. Diversified.

5. The Debtor listed the value of his residence as $175,000 on his original Schedule A; the Debtor later indicated that the value of the property was $191,000 (and the Trustee's appraiser found it to be worth more than $215,000).

6. The Debtor failed to list his personal bank account in Item #2 on his original Schedule B; the Debtor later listed this account.

7. The Debtor failed to list his IRA in Item #11 on his original Schedule B and Schedule E; although the Debtor later listed his IRA worth approximately $15,000, he eventually removed it from Schedule B.

8. The Debtor failed to list his stock in J.M. Diversified in Item #12 on his original Schedule B; the Debtor later listed his stock, but claimed it had no value.

Roberts argues that most of the omitted information was disclosed in the amendments after the meeting of creditors, and that such amendments are common.[11] However, whether the omissions were disclosed at the meeting of creditors is of no consequence. "It is well established that the debtor may not hide behind the 'invisible cloak' of disclosure by alleging that although the required information was not listed on the appropriate schedules, the omitted assets were revealed to the Trustee at the 341 meeting of creditors." *Brooks*, 278 B.R. at 566. Statements made in the schedules and statement of financial affairs must be treated seriously, for "a reckless indifference to the truth is the equivalent of fraud." *Diorio v. Kreisler–Borg Constr. Co. (In re Diorio)*, 407 F.2d 1330 (2d Cir.1969). The Debtor is responsible for providing truthful and reliable information, especially after Counsel was granted an extension of time "in order for [the Debtor] to *accurately* complete and file with the Court his Schedules and Statement of Financial Affairs." Motion for Extension of Time to File Schedules and Statement of Affairs (emphasis added). Moreover, Roberts represented the Debtor in litigation involving the Debtor's business for the past two years. Roberts also drafted both the original and amended deeds, transferring the Debtor's entire, sole interest in his residence to the Debtor's wife. Roberts, an experienced bankruptcy attorney,[12] prepared the petition, Schedules, and Statement of Financial Affairs. In these circumstances, the failure to include complete and accurate information about the Debtor's business, income, or residence in the filing of the petition is tantamount to fraud.[13] Robert's argument

11. "[I]t's common that the initial schedules that are filed are either inaccurate or they don't have all the information that the trustee is looking for and they are commonly amended. I think that's a purpose of allowing the amendment to correct whatever information may be either left off initially, may be required by the trustee, and as the bankruptcy process goes on, there's additional creditors that are found that have to be added, additional information for whatever reason. And the purpose of amendment is to make these schedule [sic] correct." Tr. 51.

12. The Court checked its CM/ECF database and discovered that Roberts has represented debtors and other interested parties in the Northern District of Georgia in over fifty cases. Moreover, one of Roberts' conflict letters in this proceeding indicates he also represents a party in a bankruptcy case in Illinois.

13. While the Debtor contests that he did not disclose that he was the owner of J.M. Diversified because he felt the stock is worthless, a debtor must list *all* assets and liabilities on his schedules and statement of affairs. As aforementioned, it is not for the debtor to deter-

in this regard might be persuasive for an unsophisticated, *pro se* debtor. However, the Debtor owned and operated a substantial business and was assisted by experienced bankruptcy counsel.

As the Supreme Court has stated, the benefit of the discharge is for the "honest but unfortunate debtor." *Grogan*, 498 U.S. at 279, 111 S.Ct. 654. After considering the Debtor's explanations and observing the Debtor's demeanor, the Court finds that the Debtor was not honest. *Prevatt*, 261 B.R. at 59 (intent to hinder the trustee and creditors may be inferred solely from a debtor's false and misleading testimony which effectively obscures the assets of the estate). The Court finds it reasonable to infer that the Debtor, with the assistance of Roberts, knowingly and fraudulently made a false oath upon signing these incomplete and erroneous Schedules and Statement of Financial Affairs.[14] The Debtor signed these statements under penalty of perjury, and verified their accuracy, and is required to know the contents of these documents. It is irrelevant that the Debtor "accidentally" omitted certain property or "innocently" failed to include property thought to be of no value, and then later included these assets. To exclude income, transfers, and the Debtor's ownership of a business from the bankruptcy petition under these circumstances

is unreasonable and inexcusable. The amended Schedules and Statement of Financial Affairs are replete with numerous significant omissions and riddled with inaccuracies, which are indicative of a pervasive pattern clearly warranting the conclusion that they were not due to mistake or oversight. The Court finds that these errors were the result of an intent to deceive creditors, the Trustee, and this Court. Indeed, the Debtor knowingly and fraudulently made false oaths and omissions about material matters. Accordingly, the Debtor's discharge is denied pursuant to section 727(a)(4)(A).

### 2. SECTION 727(a)(4)(D)

The Plaintiff also seeks a denial of the Debtor's discharge pursuant to § 727(a)(4)(D), which provides for the denial of a debtor's discharge if he "withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs." 11 U.S.C. § 727(a)(4)(D). The recorded information must be withheld from an officer of the estate, typically the trustee, entitled to possession of it pursuant to the Bankruptcy Code.[15] The Plaintiff's section 727(a)(4)(D) objection is essentially based on the same evidence as its section 727(a)(4)(A) objection. While the Plaintiff

---

mine what information should be disclosed. *See Chalik*, 748 F.2d at 618.

**14.** The Debtor attested to the truth and completeness of answers given under oath. *See Smith*, 278 B.R. at 259 n. 4 ("[T]he requirements of the schedules are sufficiently plain, that any attorney who diligently seeks to assist a debtor will easily succeed in eliciting accurate and complete disclosure from an honest debtor .... The questions posed by the schedules are plan [sic] enough that a diligent debtor could also be guided to a successful completion.").

**15.** The wrongful withholding of recorded information *after* the filing of a case under title 11 is also a bankruptcy crime. Paragraph 9 of 18 U.S.C. § 152 provides that a person who: "after the filing of a case under title 11, knowingly and fraudulently withholds from a custodian, trustee, marshal, or other officer of the court or a United States trustee entitled to its possession, any recorded information (including books, documents, records, and papers) relating to the property or financial affairs of a debtor shall be fined under this title, imprisoned not more than 5 years, or both." *See European Am. Bank v. Lapes* (*In re Lapes*), 254 B.R. 501, 505 (Bankr.S.D.Fla.2000).

has proved that the Debtor failed to disclose information related to his property or financial affairs with the intent to hinder the investigation of the trustee and creditors, it has failed to present evidence of specific document requests made by the Trustee. "If the documents were never requested, and absent any allegations of active concealment of such documents, there cannot be a claim of knowing and fraudulent withholding." *Jeffrey M. Goldberg & Assoc. v. Holstein (In re Holstein)*, 272 B.R. 463, 479 (Bankr.N.D.Ill. 2001). *See M & I Heat Transfer Prods. v. Gorchev (In re Gorchev)*, 275 B.R. 154, 164 (Bankr.D.Mass.2002) (where the plaintiff failed to prove that the debtor withheld recorded information when "the Plaintiff [did] not specify which records were requested and when, nor [did] he specify what precisely was withheld"). Although the Debtor may have deliberately withheld or delayed the production of records in the hope that the Trustee would abandon her investigation, the Plaintiff has failed to meet its burden with respect to its under section 727(a)(4)(D) count.

## III. RELEVANT CONSIDERATIONS

Bankruptcy courts have a duty to preserve the bankruptcy process for its intended purpose. In this matter, the Court is especially appalled by the conduct of Roberts. The actions of Roberts in this matter are unlike anything to come before this Court. Roberts acted in a manner that degrades the integrity of the Court, and his conduct impeded the administration of justice of two courts: the Superior Court and this Court. In order to practice law in Georgia, Roberts is bound by the

Attorney's Oath to "truly and honestly, justly and uprightly" conduct himself according to the laws. An attorney is "a representative of clients, an officer of the legal system and a citizen having special responsibility for the quality of justice" who "should demonstrate respect for the law, the legal system and for those who serve it, including judges, other lawyers and public officials." *See* The Preamble of the Georgia Rules of Professional Conduct, Rule 4–102 of the Rules of the State Bar of Georgia; STATE BAR OF GEORGIA HANDBOOK (2003–2004) H–20—H–23. The Court questions how seriously Roberts takes his obligations as an officer of the court. Roberts' actions constitute an affront to the administration of justice and the public trust.[16] His conduct is a stark example of the type of professional misconduct that erodes the public's confidence in and respect of the legal profession and justice system. *See* Paul W. Bonapfel, *Practice in the Grand Style* (pt. 1), 8 Ga. Bar J., No. 5, 63 (April 2003), *Officers of the Court* (pts. 2 & 3), 8 Ga. Bar J., No. 6, 83 (June 2003), 9 Ga. Bar J., No. 1, 70 (August 2003).

Counsel is obligated to comply with Rule 2091–1 of the Local Rules of Practice for the United States Bankruptcy Court for the Northern District of Georgia, which provides that attorneys practicing in this Court shall be governed by the Local Rules 83.1C and 83.1F of the District Court. In these rules, the District Court has adopted the Code of Professional Responsibility and the Standards of Conduct contained in the Rules and Regulations of the State Bar of Georgia. The Supreme

**16.** "The harm which devolves is not limited to the affected creditor. By example and word of mouth, the 'technique' spreads until it is no longer perceived by the Bar or by debtors as an abuse but as a permissible manipulation of the system. In the meantime, respect for the bankruptcy system, including attorneys who wish to assist honest debtors, deteriorates. When public respect for any part of the legal system falters, it harms everyone involved in the system." *In re Robinson*, 198 B.R. 1017, 1025 (Bankr.N.D.Ga.1996).

Court of Georgia adopted the Georgia Rules of Professional Conduct on June 12, 2000, thereby replacing the Code of Professional Responsibility and the Standards of Conduct. The Georgia Rules of Professional Conduct are set forth in Rule 4–102 of the Rules of the State Bar of Georgia. *See* STATE BAR OF GEORGIA HANDBOOK (2003–2004) H–20—H–53. Counsel's conduct may implicate a number of these standards,[17] as well as the American Bar Association's Model Rules of Professional Conduct.[18] When Roberts prepared

**17.** *Subsection (d) of Rule 4–102, Disciplinary Action; Levels of Discipline; Standards;*

RULE 1.2 SCOPE OF REPRESENTATION: ... (d) A lawyer shall not counsel a client to engage in conduct that the lawyer knows is criminal or fraudulent, nor knowingly assist a client in such conduct, but a lawyer may discuss the legal consequences of any proposed course of conduct with a client and may counsel or assist a client to make a good faith effort to determine the validity, scope, meaning or application of the law; (e) When a lawyer knows that a client expects assistance not permitted by the rules of professional conduct or other law, the lawyer shall consult with the client regarding the relevant limitations on the lawyer's conduct. . . .

RULE 3.1 MERITORIOUS CLAIMS AND CONTENTIONS: In the representation of a client, a lawyer shall not: (a) file a suit, assert a position, conduct a defense, delay a trial, or take other action on behalf of the client when the lawyer knows or when it is obvious that such action would serve merely to harass or maliciously injure another; (b) knowingly advance a claim or defense that is unwarranted under existing law, except that the lawyer may advance such claim or defense if it can be supported by good faith argument for an extension, modification or reversal of existing law. . . .

RULE 3.2 EXPEDITING LITIGATION: A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client. . . .

RULE 3.3 CANDOR TOWARD THE TRIBUNAL: (a) A lawyer shall not knowingly:

(1) make a false statement of material fact or law to a tribunal;

(2) fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client;

(3) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or

(4) offer evidence that the lawyer knows to be false. If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take reasonable remedial measures. . . .

RULE 3.4 FAIRNESS TO OPPOSING PARTY AND COUNSEL: A lawyer shall not:

(a) unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value. A lawyer shall not counsel or assist another person to do any such act;

(b)(1) falsify evidence;

(2) counsel or assist a witness to testify falsely;

(3) pay, offer to pay, or acquiesce in the payment of compensation to a witness contingent upon the content of the testimony or the outcome of the case. But a lawyer may advance, guarantee, or acquiesce in the payment of:

(i) expenses reasonably incurred by a witness in preparation, attending or testifying;

(ii) reasonable compensation to a witness for the loss of time in preparing, attending or testifying;

(iii) a reasonable fee for the professional services of an expert witness . . . .

STATE BAR OF GEORGIA HANDBOOK (2003–2004) H–20—H–53.

**18.** *See* Model Rule 3.1 (lawyer shall not bring or defend any action or assert or controvert an issue without nonfrivolous basis for doing so including good faith argument for any position contrary to existing law); Model Rule 3.2 (make reasonable efforts to expedite litigation consistent with client interests); Model Rule 3.3 (lawyer shall not knowingly make false statement of material fact or law, fail to disclose material fact except as required by law, or fail to disclose legal authority in controlling jurisdiction); Model Rule 3.4 (lawyer shall not willfully obstruct another party's access to evidence, make a frivolous discovery

and filed the Notice of Bankruptcy, he knew full well that no bankruptcy had been filed. He also knew that transferring the Debtor's property prior to and after the filing was improper.

The Debtor's and Roberts' actions [19] may also implicate Rule 9011 of the Bankruptcy Rules,[20] modeled after Rule 11 of the Federal Rules of Civil Procedure. *See, e.g., In re Chicago Midwest Donut, Inc.,* 82 B.R. 943, 949 (Bankr.N.D.Ill.1988) (Rule 9011 violations can be predicated upon a single misleading or unfounded statement); *In re Bono,* 70 B.R. 339, 345 (Bankr.E.D.N.Y.1987) (bankruptcy courts have authority to assess attorneys' fees and expenses against counsel who willfully abuse judicial process). The purpose of Rule 9011 is to deter frivolous litigation and baseless filings, thus avoiding unnecessary judicial effort and abuse of the bankruptcy system. *See Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 393, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). Three types of conduct warrant Rule 9011 sanctions: "(1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; and (3) when the party files a pleading in bad faith for an improper purpose." *Didie v. Howes,* 988 F.2d 1097, 1104 (11th Cir.1993) (quoting *Pelletier v. Zweifel,* 921 F.2d 1465, 1514 (11th Cir.1991)); *see also Glatter v. Mroz (In re Mroz),* 65 F.3d 1567, 1572 (11th Cir.1995) (citing *Mazzocco v. Smith (In re Smith),* 82 B.R. 113, 114 (Bankr.D.Ariz.1988)) (Rule 9011 sanctions are appropriate when (i) the papers are frivolous, legally unreasonable or without factual foundation, or (ii) the pleading is filed in bad faith or for an improper purpose). Courts have imposed Rule 9011

---

request or fail to make reasonably diligent efforts to comply with proper discovery, allude to irrelevant material at trial, or obstruct others from giving relevant information to another party in most cases). Model Rules of Prof'l Conduct.

19. When they sign the petition, both the Debtor and Counsel are subject to Rule 9011. *See In re Kelley,* 255 B.R. 783, 786 (Bankr. N.D.Ala.2000) ("By signing the petition and presenting the entire bankruptcy package to the Court, the attorney subjects himself to the limits, scope, and bounds of Rule 9011."); *In re Robinson,* 198 B.R. 1017, 1023 (Bankr. N.D.Ga.1996) ("Sanctions may be imposed against the individual who signed the pleading or against the client represented by the signer. If the client is knowledgeable about bankruptcy law or shared responsibility with the attorney for litigation strategy, sanctions may be imposed upon the client and attorney jointly and severally.") (internal citations omitted).

20. Rule 9011 of the Bankruptcy Rules provides, in pertinent part:
 (b) Representations to the court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—
 (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
 (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
 (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
 (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.
 Fed. R. Bankr.P. 9011.

sanctions where the bankruptcy filing was motivated to delay or thwart a state court action. *See, e.g., In re Smith,* 257 B.R. 344, 352–53 (Bankr.N.D.Ala.2001) (where the debtor filed to stop the state court from entering judgment in favor of the opposing party while the debtor effectuated the transfer of his only assets); *In re Collins,* 250 B.R. 645 (Bankr.N.D.Ill.2000) (where the debtor was involved in litigation and filed for chapter 7 relief after realizing he had lost all hope of winning his case); *In re King,* 83 B.R. 843, 848 (Bankr.M.D.Ga.1988) (where the debtor filed bankruptcy for the improper purpose of delaying a state court trial); *see also Trizec Colony Square, Inc. v. Gaslowitz (In re Addon Corp.),* 231 B.R. 385, 390 (Bankr.N.D.Ga.1999) (where the debtor filed in bad faith to hinder, delay, and frustrate a creditor's state court action to obtain possession of its premises and payment of past due rent). The Court finds that the Debtor and Roberts attempted to manipulate the bankruptcy system, using the automatic stay as an abusive litigation tactic, "as both a shield and a weapon." *In re Robinson,* 198 B.R. 1017, 1021 (Bankr.N.D.Ga.1996).

Courts have the power to protect the integrity of the judicial system from such abuse. This Court has the inherent power of a federal court to regulate its own docket and to ensure that its process is not being abused. *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43–44, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991); *Mroz,* 65 F.3d at 1575. Additionally, this Court has statutory authority, pursuant to section 105(a) of the Bankruptcy Code, to impose sanctions to prevent an abuse of bankruptcy process. *See Jove Eng'g, Inc. v. I.R.S. (In re Jove Eng'g, Inc.),* 92 F.3d 1539 (11th Cir.1996); *In re Kelley,* 255 B.R. 783 (Bankr.N.D.Ala.2000); *In re Williams,* 213 B.R. 189 (Bankr.N.D.Ga.1997). *See also Collins,* 250 B.R. at 656 (section 105 grants the court authority to sanction abusive conduct that impedes the judicial process) (citing *In re Volpert,* 110 F.3d 494, 501 (7th Cir.1997)). In the instant case, it appears that Roberts facilitated and assisted in the Debtor's abuse of the bankruptcy system.[21] While such conduct may be sanctionable under the Court's inherent and statutory power, it may also implicate 18 U.S.C. §§ 152[22] and

**21.** *See United States v. Parkhill,* 775 F.2d 612 (5th Cir.1985) (affirming the conviction of an attorney for the fraudulent concealment and transfer of assets from the debtor's estate where the attorney did not include the transfer in the schedules because he was ignorant of the law).

**22.** Section 152 provides:

A person who—

(1) knowingly and fraudulently conceals from a custodian, trustee, marshal, or other officer of the court charged with the control or custody of property, or, in connection with a case under title 11, from creditors or the United States Trustee, any property belonging to the estate of a debtor;

(2) knowingly and fraudulently makes a false oath or account in or in relation to any case under title 11;

(3) knowingly and fraudulently makes a false declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, in or in relation to any case under title 11;

(4) knowingly and fraudulently presents any false claim for proof against the estate of a debtor, or uses any such claim in any case under title 11, in a personal capacity or as or through an agent, proxy, or attorney;

(5) knowingly and fraudulently receives any material amount of property from a debtor after the filing of a case under title 11, with intent to defeat the provisions of title 11;

(6) knowingly and fraudulently gives, offers, receives, or attempts to obtain any money or property, remuneration, compensation, reward, advantage, or promise

157.[23] The consequences, if any, for the actions of Roberts will be addressed in other proceedings in this Court, and possibly other forums as well.

## IV. CONCLUSION

The Plaintiff has established by a preponderance of the evidence two of the three claims set forth in the Complaint. For the reasons discussed above, the Court finds that the Debtor is not entitled to a bankruptcy discharge pursuant to sections 727(a)(2) and 727(a)(4)(A) of the Bankruptcy Code.

Pursuant to Rule 9022(a) of the Bankruptcy Rules, a final separate Judgment will be entered in accordance with these Findings of Fact and Conclusions of Law.

**IT IS ORDERED** that the discharge of Jose Orlando Matus be and is hereby **DENIED**.

The Clerk of Court is directed to serve a copy of this Order upon the Debtor, Debtor's Counsel, Plaintiff's Counsel, the Chapter 7 Trustee, and all other parties in interest to the instant proceeding.

thereof for acting or forbearing to act in any case under title 11;

(7) in a personal capacity or as an agent or officer of any person or corporation, in contemplation of a case under title 11 by or against the person or any other person or corporation, or with intent to defeat the provisions of title 11, knowingly and fraudulently transfers or conceals any of his property or the property of such other person or corporation;

(8) after the filing of a case under title 11 or in contemplation thereof, knowingly and fraudulently conceals, destroys, mutilates, falsifies, or makes a false entry in any recorded information (including books, documents, records, and papers) relating to the property or financial affairs of a debtor; or

(9) after the filing of a case under title 11, knowingly and fraudulently withholds from a custodian, trustee, marshal, or other officer of the court or a United States Trustee entitled to its possession, any recorded information (including books, documents, records, and papers) relating to the property or financial affairs of a debtor,

shall be fined under this title, imprisoned not more than 5 years, or both.

18 U.S.C. § 152.

23. Section 157 provides:

A person who, having devised or intending to devise a scheme or artifice to defraud and for the purpose of executing or concealing such a scheme or artifice or attempting to do so—

(1) files a petition under title 11;

(2) files a document in a proceeding under title 11; or

(3) makes a false or fraudulent representation, claim, or promise concerning or in relation to a proceeding under title 11, at any time before or after the filing of the petition, or in relation to a proceeding falsely asserted to be pending under such title,

shall be fined under this title, imprisoned not more than 5 years, or both.

18 U.S.C. § 157.