**In re Frank VINA and Connie A. Jordan–Vina, Debtors.**

**Fleet Securities, Inc., Plaintiff,**

v.

**Frank Vina and Connie A. Jordan–Vina, Defendants.**

**Bankruptcy No. 01–16055–9P7. Adversary No. 02–22.**

United States Bankruptcy Court, M.D. Florida, Fort Myers Division.

July 19, 2002.

**805**

Phillip J. Jones, Port Charlotte, FL, for debtors.

Thomas S. Heidkamp, Ft. Myers, FL, Chapter 7 Trustee.

Richard Johnston, Jr., Fort Myers, FL, plaintiff.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

The matter under consideration in this Chapter 7 liquidation case is the challenge by Fleet Securities, Inc. (Fleet Securities) of the rights of Frank Vina and his wife, Connie A. Jordan–Vina (Debtors) to the benefits of a general bankruptcy discharge. The Complaint filed by Fleet Securities sets forth two separate claims in two separate Counts.

In the Complaint, Fleet Securities states in Paragraph 6 that this is an "action to deny or revoke the Debtors' discharge pursuant to 11 U.S.C. § 727(5)." [sic]. However, Fleet Securities alleges as a basis of its claim that the Debtors knowingly and fraudulently made a false oath in their Schedules filed in this case and in the Statement of Financial Affairs in that they failed to include the following:

a. their interest in a certain real property located at 2311 Siesta Drive, Sarasota County, Florida; and

b. payments of $500 per month for six months made to Wal–Mart Corporation the year preceding the bankruptcy.

According to Fleet Securities, such payments either constitute a preference or constitute personal property, which should have been scheduled on Schedule B. Based on the foregoing, Fleet Securities seeks an order denying or revoking the Debtors' discharge pursuant to Section 727(a)(4)(A) of the Code.

The claim in Count II is also described as an action to deny or revoke the Debtors' discharge pursuant to 11 U.S.C. § 727(a)(2). In this Count, Fleet Securities contends that the Debtors owned an interest in certain real property located in Sarasota County, Florida; that on September 26, 2000 the Debtors executed a warranty deed in favor of Glenn A. Vina and Suzanne Vina, which was dated September 28, 1999; and that the deed was recorded in the public records of Sarasota County,

Florida. Fleet Securities alleges that, with the intent to hinder, delay or defraud unsecured creditors, the Debtors transferred their interest in this property.

It should be noted at the outset that Fleet Securities in addition to seeking an order denying the Debtors' discharge also seeks an order revoking the Debtors' discharge, which is of course in appropriate in light of the fact that the Debtor's have not received a discharge yet. The facts relevant to the resolution of the two claims as established at the final evidentiary hearing can be summarized as follows.

On December 8, 1998, Ellen S. Goldberg and Mark L. Tishman, husband and wife, by Warranty Deed conveyed their interest in certain real property located at 2311 Siesta Drive, Sarasota, Florida 34329, to the Debtors. (Creditor's Exh. 2). The down payment for this purchase was furnished by the Debtors in the approximate amount of $10,000. The balance of the purchase price was financed through a mortgage in favor of North American Mortgage Company (North American). (Creditor's Exh. 3). The mortgage document indicates that the mortgagors are Frank J. Vina and Connie A. Vina, the Debtors. It is without dispute that the Debtors never resided at the property and the property was solely occupied as the homestead of Glenn and Suzanne Vina, the son and the daughter-in-law of the Debtors.

It appears that while the mortgage payments were made by the Debtors, they were reimbursed by Glenn and Suzanne Vina. The mortgage was ultimately paid off; and on September 20, 2001, North American executed a Satisfaction of Mortgage. (Creditor's Exh. 5). It further appears that most likely due to the overpayment on the mortgage, on September 25, 2001, North American issued a check to the Debtors in the amount of $2,538.06, which was endorsed by the Debtors to Glenn Vina. (Creditor's Exh. 4).

In addition, the parties stipulated to the following facts regarding transfers made during the year preceding the filing of this case. In 2001, the Debtors owned a dividend reinvestment account with Wal–Mart Stores, Inc. (Wal–Mart). The Wal–Mart account was closed pre-petition. The Debtors did not list the Wal–Mart account either on Schedule B or the Statement filed in this case. In the year prior to filing the bankruptcy case, the Debtors made gifts to their children as follows:

a. $3,670 to their son Neil Jordan, at nine times during the course of that year;

b. $955 to their daughter Diana Vina, at nine times during the course of that year; and

c. $7,155 to their daughter Phyllis Jordan, at nineteen times during the course of that year.

None of the foregoing gifts were listed on the Statement filed in this bankruptcy case. Finally, the Debtor Frank Vina owned an interest in a stock account along with Diane Vina as "joint tenants with right of survivorship," and this account was not listed in the Schedules. And, he also owned an interest in a stock account with Lisa Vina as "joint tenants with right of survivorship," which was also not listed in the Schedules.

It should be noted at the outset that notwithstanding what is described in the Complaint as an action to revoke the discharge, it is simply not a proceeding pursuant to 11 U.S.C. § 727(d), but it is a Complaint to deny the Debtors' discharge. Moreover, it is also clear that contrary to what is stated in the Complaint that this is not an action pursuant to Section 727(a)(5) of the Code, instead Count I is based on 11 U.S.C. § 727(a)(4), false oath in bankrupt-

cy and Count II is based on 11 U.S.C. § 727(a)(2), fraudulent transfer within one year.

■ While the burden of proof is on the party challenging a debtor's right to benefits of the general discharge, the standard of proof is no longer the clear and convincing evidence but a mere preponderance is sufficient to prevail on the objections. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (dicta); *In re Keeney*, 227 F.3d 679 (6th Cir.2000); *In re Scott*, 172 F.3d 959 (7th Cir.1999); *In re Brown*, 108 F.3d 1290 (10th Cir.1997).

■ It is also well established that the provisions of the discharge were designed to assist a financially distressed debtor to receive a fresh start in life unencumbered from the financial vicissitudes of the debtor's past. *Lines v. Frederick*, 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970). Thus, these provisions of the Code should be construed in favor of the debtor and strictly against the one who challenges the debtor's right to the discharge. *In re Muscatell*, 113 B.R. 72 (Bankr.M.D.Fla. 1990).

■ It is equally true that the benefits of the discharge are reserved to honest debtors. A debtor who comes to the bankruptcy court must come clean and make full disclosure of all information relevant to the administration and must fully cooperate with the trustee. *Kentile Floors, Inc. v. Winham*, 440 F.2d 1128 (9th Cir.1971); *In the Matter of Garman*, 643 F.2d 1252 (7th Cir.1980). It is not for the debtor to decide what is and is not relevant. A debtor who omits important information and fails to make full disclosure, places the right to the discharge in serious jeopardy. The veracity of a debtor's Statement is absolutely essential to the successful administration of the Bankruptcy Code. *Diorio v. Kreisler–Borg Construction Co.,*

407 F.2d 1330 (2nd Cir.1969); *In re Chalik*, 748 F.2d 616 (11th Cir.1984). It is true that a discharge should not be denied when the omissions were due to mere mistake or inadvertence. *In re Ellingson*, 63 B.R. 271 (Bankr.N.D.Iowa 1986).

■ While it is true that facially from the Exhibits introduced and admitted into evidence, the Debtors did in fact convey interest in real estate to their son and daughter-in-law, this Court is satisfied that this transfer totally lacked the requisite intent to defraud anyone or knowingly commit a false oath in bankruptcy by not revealing this transfer on the Statement of Financial Affairs. There is no question that the transfer should have been stated on the Statement of Financial Affairs. However, to sustain a claim of false oath in bankruptcy it must be knowingly and fraudulent made for the purpose of either concealing material information or to defraud either the trustee or creditors.

In the present instance, this Court is satisfied that this transaction does not bear a close analysis to a finding of false oath for the following reasons. The testimony is unrebutted that 2311 Siesta Drive, was purchased for the son and the daughter-in-law and the Debtors merely assisted them in this purchase because the son did not have the credit to obtain the necessary financing for the purchase. All mortgage payments, while initially made by the Debtors, were reimbursed by the son. And, while the Debtors were facially the legal owners of the property on record, which in retrospect was an unwise way to arrange the transaction, the real owners of the property were the son and the daughter-in-law.

■ F.R.B.P. 4005 provides that at the trial on a complaint objecting to discharge, the plaintiff has the burden of proving the objection. In order to estab-

lish a viable claim under Section 727(a)(2)(A) of the Code, the movant has the burden to establish that the transfer occurred within one year preceding the commencement of the case and that the debtor transferred the property with the *intent* to hinder, delay or defraud creditors (emphasis supplied). The intent of the debtor, of course, can seldom be established by direct evidence but extrinsic evidence may warrant the finding that the debtor did in fact act with intent when the transfers in question were accomplished. The hallmark of fraudulent intent has been considered by numerous courts and it is generally agreed that they are the following: (1) lack of adequate consideration for the transfer; (2) relationship between the parties; (3) retention of benefit of the property in question by the debtor even though property has ostensibly been transferred, this is the so-called "sham" transfer; (4) the existence of cumulative effect or pattern or series of transactions and the course of conduct incurring debt; and, most importantly (5) pendency or threat of suit by creditors. *In re Gollomp,* 198 B.R. 433 (S.D.N.Y.1996).

■ Concerning the claim of fraudulent transfer, it is also clear that the conveyance by the Debtors to their son and daughter-in-law of the property on September 28, 1999, although it was later recorded on September 26, 2000, was not made with any required intent to defraud, delay, or hinder creditors.

■ Finally, the allegations regarding the $500 a month payment to Wal–Mart was not supported by any evidence whatsoever. Although the stipulation includes numerous gifts by the Debtors to family members, neither Count I nor Count II in the Complaint alleged anything concerning these transactions. For this reason, it is somewhat puzzling why counsel for the Debtors stipulated to these transactions which were not pled in any of the Counts of the Complaint. Be that as it may, none of these transactions has any consequence and does not rise to the level of fraudulent transfer. Nor does the failure to disclose these transactions amount to a false oath in bankruptcy.

Based on the foregoing, this Court is satisfied that Fleet Securities failed to carry the burden to establish with the requisite degree of proof either the false oath claim in Count I or the fraudulent transfer in Count II. Therefore, the Complaint should be dismissed with prejudice.

A separate final judgment shall be entered in accordance with the foregoing.