In re Gregory J. SMITH d/b/a Gregory J. Smith d/b/a Smith Financial Agency d/b/a the Smith Agency, Debtor.

Theresa Wilson and Karen Judson, Individually and as Trustees of The Wilson 1992 Trust dated August 7, 1992 and Karen Judson, Individually and as Trustee of The Karen Judson Separate Property Trust dated June 7, 2001, Plaintiffs,

v.

Gregory J. Smith d/b/a Gregory J. Smith d/b/a Smith Financial Agency d/b/a the Smith Agency Defendant.

Bankruptcy No. 9:03BK13111–ALP.
Adversary No. 9:05AP670–ALP.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Dec. 7, 2006.

Edward R. Miller, Miller and Hollander, Naples, FL, for Debtor.

*FINDINGS OF FACTS, CONCLU-SIONS OF LAW AND MEM-ORANDUM OPINION*

ALEXANDER L. PASKAY, Bankruptcy Judge.

THE MATTER under consideration in this Chapter 7 liquidation case of Gregory J. Smith (Debtor), originally filed as a Chapter 13 case on June 30, 2003, but converted to Chapter 7 on June 15, 2005, is a challenge of the Debtor's right to protection under the Bankruptcy Code. The matter is presented for this Court's consideration by a Complaint filed by Theresa Wilson and Karen Judson (Plaintiffs). The Plaintiffs in their Complaint set forth two separate claims in two separate counts. The claim in Count I is based on the allegation that the Debtor, within one year of filing his Petition for Relief in this Court, transferred money to Executive Title Insurance, Services Inc., or David Weekley Homes, LLC, to purchase real property located at 2618 Southwest 37th Street, Cape Coral, Lee County, Florida, with intent to hinder, delay, and defraud his creditors including the Plaintiffs. The claim in Count II is based on the allegation that on March 1, 2003, the Debtor transferred money to National City Mortgage to pay off a mortgage on the real property described above with the intent to hinder, delay, and defraud his creditors, including the Plaintiffs. The claims as described are the basis for the Plaintiffs' contention that by virtue of Section 727(a)(2)(A) of the Bankruptcy Code, the Debtor is not entitled to a general discharge.

In due course the Debtor filed his Answer to the Complaint and admitted all allegations set forth in both counts with

the exception of the allegations set forth in paragraphs seven (7) and nine (9) respectively, which were allegations that the transfers as described were made with the intent to hinder, defraud or delay his creditors.

The facts relevant to claims asserted by the Plaintiffs as appear from the record, testimony of witnesses, and documentary evidence introduced and admitted into evidence are as follows.

The Debtor and his wife, Deborah K. Smith (Ms. Smith) were at the time relevant, residents and citizens of the State of California and were residing at 932 Boulder Road in Alpine, San Diego County. Both the Debtor and Ms. Smith were licensed insurance agents. The Debtor was selling life insurance, annuities and investment contracts. According to his income tax returns for the year ending 2002, his gross taxable income was $188,080.00, and $144,908.00 for the year ending 2001. The Debtor has engaged in this type of business for more than thirty years. Although Ms. Smith was also licensed to sell insurance, it is without dispute that the vast majority of the earnings in the years indicated are attributable to the Debtor's sales activities and only a minimal degree to the sales of Ms. Smith.

The Debtor was associated with an insurance brokerage firm known as Legacy Holding Services, Inc., formerly known as Legacy Financial Services (Legacy). The Debtor was also associated with Russian River Financial Services, Inc. (Russian). Legacy and Russian were both broker dealers. The Debtor also used the fictitious names of "Smith Financial Services" and "The Smith Agency," acting as a financial planner specializing in financial security and retirement planning for senior citizens.

Alpha Telcom, Inc. (Alpha) was a corporation engaged in the business of operating an investment scheme through salespersons like the Debtor. The investment scheme called for the investors to purchase payphones that were to be placed on the East Coast. The phone investments were to have a minimum monthly return of $58.34 per unit. The operation came to a halt when the SEC filed a suit against Alpha charging securities fraud and the SEC obtained an injunction prohibiting Alpha and, in turn, the Debtor from continuing to sell the investments. Almost immediately thereafter several suits were filed against the brokers and the Debtor, including one by James and Laree Shackelford, filed in the Central District Superior Court of the State of California in San Diego, East County Division and another by the Plaintiffs in the same court. There was also an arbitration conducted in a suit filed by Richard Hernandez, et al, against Russian River Services and the Debtor. These suits were filed against the Debtor in California on May 29, 2002 (Hernandez Arbitration), June 27, 2002 (Shackelford suit), and August 15, 2002 (Plaintiffs' suit).

The record reveals that the Debtor and his wife traveled to Florida on October 1, 2002. On October 9, 2002, the Debtor and his wife opened a bank account at First National Bank, now known as Fifth Third Bank. Some days before October 11, 2002, the Debtor and his wife contacted the office of the most prominent of bankruptcy practitioners representing debtors in this Court, the firm of Miller and Hollander, located in Naples, Florida, and arranged for an appointment. On October 11, 2002, the Debtor met with Mr. Miller of the law firm of Miller and Hollander. On October 15, 2002, the Debtor and his wife applied for Florida Driver's licenses, which indicated their address as being 910 Virginia Avenue, Ft. Myers, Florida. It is without dispute that the Debtor and his wife were not Florida residents at that time and

their domicile was still in Alpine, California. On October 16, 2002, the Debtor and his wife entered into a contract to purchase real estate located at 2618 SW 37th Street, Cape Coral, Florida. On October 17, 2002, the Debtor and his wife obtained from the a bank cashiers check and delivered the same to David Weekly Homes, the seller of the real property. On November 9, 2002, the Debtor and his wife listed their residence in Alpine, California, for sale with a realtor. On December 11, 2002, the Buyers Settlement Statement on the property located in Cape Coral (Plaintiffs' Exhibit No. 6) was executed. On December 16, 2002, the purchase on the Cape Coral residence was closed and the Debtor and his wife delivered a check in the amount of $10,687.00. On December 21, 2002, the Debtor and his wife executed a contract for the sale of their California residence. Sometime in early January 2003, the Debtor and his wife moved into their residence in Cape Coral. On January 27, 2003, the sale of their home in California was closed. Between January 27, 2003 and March 20, 2003, the Debtor and his wife inquired from the holder of the mortgage, National City Mortgage, as to the payoff of their Cape Coral residence. On March 21, 2003, the Debtor and his wife received the response from the holder of the mortgage and on April 1, 2003, the Debtor and his wife paid off the mortgagee with a check in the amount of $171,473.76. On May 13, 2003, the Debtor and his wife obtained a Satisfaction of Mortgage (Plaintiffs' Exhibit No. 18).

The record reveals that during the litigation commenced by the Plaintiffs against the Debtor in California, the Debtor was deposed on December 16, 2002. When questioned about whether he still lived "on Boulders there in Alpine?" he answered affirmatively. When asked whether he had any plans to move, the Debtor replied, "no." The Debtor's wife was deposed one day later and when asked whether she had any plans to move from her present resident address, she answered, "not at this time." (Plaintiffs' Exhibit 11, page 148, lines 15 and 16).

At the second deposition held in California on January 20, 2003, the Debtor reaffirmed his testimony of December 16 indicating that he had no intention of moving; however, the Debtor then testified that his plans had changed and he now intended to move to Florida in the next three (3) or four (4) weeks. On January 27, 2003, after the proceeds from the sale of the Debtor's California home were wired to the bank account in Florida, the Debtor filed a change to his deposition testimony from December 16, 2002; on page 217 line 8 of the transcript, he stated that the correct answer to the question was "moving to Florida." On the same date the Debtor's wife also executed changes to her testimony, changing the answer on page 148, line 17 to read "moving to Florida January 25, 2003."

The record is clear that the Debtor and his wife still resided in California between October 2002 and January 2003. However, there is no question that they intended to establish a residence in the State of Florida during that time period. In order to accomplish this, the Debtor and his wife applied for Florida driver licenses, registered to vote, opened a bank account, signed a Contract to Purchase certain Florida real estate, and signed a listing agreement to sell their homestead real estate in California. On Feb 2, 2003, both the Debtor and his wife applied for and obtained a duplicate drivers license indicating their address to be their recently purchased property at 2618 SW 37th Street, Cape Coral, Florida.

Based on these facts, the Plaintiffs contend that the Debtor and his wife, in order

to take advantage of the Florida homestead exemption and put their substantial equity in their California residence out of the reach of the Plaintiffs and other creditors, purchased their Florida home and later paid off the mortgage on the property with the specific intent to hinder, delay or defraud these creditors.

The Debtor contends that the reason he and his wife moved to Florida had nothing to do with the suits filed against him involving the Alpha transactions, but was instead due to deteriorating economic conditions in California. In addition, the Debtor contends that he has several family members who reside in the State of Florida, a fact which influenced his decision to move to the state.

 The Debtor's right to a discharge is by no means a fundamental right. While it is well established that a primary purpose of the Bankruptcy Code is to give the debtor a "new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt," *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 78 L.Ed. 1230 (1934) *quoted in Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), it is also clear that a debtor's discharge in Bankruptcy was not designed to be used as a means to improperly evade debtors' obligations to their creditors; the fresh start policy of the Code is appropriately limited to the "honest but unfortunate debtor." *Grogan*, 498 U.S. at 287, 111 S.Ct. 654.

 A debtor can be denied a discharge under Section 727(a)(2)(A) of the Bankruptcy Code where property of the debtor is transferred by the debtor or with the debtor's permission within one year of the filing of the Petition, and where the transfer was made with the intent to hinder, delay, or defraud a creditor. 11 U.S.C. § 727(a)(2)(A)(2006). The plaintiff

in a trial on an objection to a discharge has the burden of proving the objection by a preponderance of the evidence. *See Grogan*, 498 U.S. at 287, 111 S.Ct. 654.

 To successfully object to a debtor's discharge under 11 U.S.C. § 727(a)(2)(A) a creditor must establish the following elements:

(1) that the act complained of was done at a time subsequent to one year before the date of the filing of the petition;

(2) with *actual intent* to hinder, delay, or defraud a creditor;

(3) that the act was that of the debtor;

(4) that the act consisted of transferring, removing, destroying or concealing any of the debtor's property.

*In re Ostrovsky*, 224 B.R. 832, 833–34 (Bankr.M.D.Fla.1998) (citing *In re Halperin*, 215 B.R. 321, 328 (Bankr.E.D.N.Y. 1997)).

 It is rare indeed that a debtor will admit that he intended to hinder, delay, or defraud his creditors by engaging in the transfer under consideration. In order to establish the fraudulent intent of the Debtor when considering an objection to the debtor's discharge, the Court must by necessity rely on inferences that properly and reasonably are drawn from the evidence and the Debtor's course of conduct. *See In re Olivier*, 819 F.2d 550 (5th Cir. 1987); *In re Devers*, 759 F.2d 751 (9th Cir.1985).

 In previous decisions this Court has noted that the hallmarks of fraudulent intent are well established and include, (1) a lack of adequate consideration for the transfer; (2) an inside relationship between the parties; (3) the retention of the benefit of the property in question by the debtor even though property has ostensibly been transferred, (a "sham" transfer); (4) the existence of cumulative effect or

pattern or series of transactions and the course of conduct incurring debt; and, significantly, (5) the pendency or threat of suit by creditors. *In re Vina,* 283 B.R. 803, 808 (Bankr.M.D.Fla.2002) (citing *In re Gollomp,* 198 B.R. 433 (S.D.N.Y.1996)).

■ In the present instance it is clear from this record that when the Alpha operation collapsed, a major source of income for the Debtor stopped. In addition, he faced numerous lawsuits from disgruntled investors who suffered a total loss on all of the investments sold to them by the Debtor. Under the California exemption laws, which limited the homestead exemption to $75,000.00, he could not have saved the equity in his home from the creditors who were able to obtain judgments against him. *See* Cal.Civ.Proc.Code § 704.730 (West 2004). *See also* Cal.Civ.Proc.Code § 704.950 (West 2004) ("A judgment lien attaches to a declared homestead in the amount of any surplus over the total of the following: ...the homestead exemption set forth in Section 704.730"). Although it was intimated by the Debtor that Legacy and Russia carried an errors and omission policy which ostensibly should have covered the Debtor, there is no evidence in this record (1) that the policy in fact existed, and (2) that the Debtor was a beneficiary of the policy; or (3) if the policy did exist, the extent of the coverage. Moreover, one would be hard pressed to find plausible evidence in this record that an errors and omissions policy would cover claims against an insured when such claims are based on securities fraud or violation of the securities regulations.

The Debtor claims that the purchase of the home in Cape Coral was not done for the purpose of hindering, delaying, or defrauding creditors. That claim is belied by this record. Shortly after their arrival in Florida in October, 2002, the Debtor contacted a bankruptcy attorney, undoubtedly to obtain legal advice as to how to protect his very substantial non-exempt assets, including the funds held in the IRA account and in the bank account, both of which were used at least in part to purchased the Cape Coral residence and ultimately to pay off the mortgage. In sum, this Court is satisfied that, based on the record, the Plaintiffs have established by the requisite degree of proof that the Debtor and his wife transferred non-exempt assets into exempt property with the specific intent to hinder, delay and defraud the Plaintiffs and other creditors and, therefore, the Debtor is not entitled to a general discharge by virtue of Section 727(a)(2)(A) of the Bankruptcy Code.

A separate final judgment shall be entered in accordance with the foregoing.

### FINAL JUDGMENT

THIS CAUSE came on for consideration upon the Court's own Motion for the purpose of entering a Final Judgment in the above-captioned adversary proceeding. The Court has considered the record and finds that this Court has entered its Findings and Fact, Conclusions of Law and Memorandum Opinion. Therefore, it is appropriate to enter Final Judgment.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that Final Judgment be, and the same is hereby, entered in favor of the Plaintiffs, Theresa Wilson and Karen Judson, in their individual capacities and as Trustees of the Wilson 1992 Trust and Karen Judson, individually and as Trustee of the Karen Judson Separate Property Trust, and against the Defendant Gregory J. Smith as to Count I of the Complaint. The Debtor is not entitled to a general discharge by virtue of Section 727(a)(2)(A) of the Bankruptcy Code. It is further

ORDERED, ADJUDGED AND DE-CREED that Final Judgment be, and the same is hereby, entered in favor of the Plaintiffs, Theresa Wilson and Karen Judson, in their individual capacities and as Trustees of the Wilson 1992 Trust and Karen Judson, individually and as Trustee of the Karen Judson Separate Property Trust, and against Defendant Gregory J. Smith as to Count II of the Complaint. The Debtor is not entitled to a general discharge by virtue of Section 727(a)(2)(A) of the Bankruptcy Code.