In the MATTER OF: Freemon E. **FULLER,** Debtor.

**Patriot Fire Protection, Inc., Plaintiff,**

v.

**Freemon E. Fuller, Defendant.**

**BANKRUPTCY CASE NO. 14–11888–WHD ADVERSARY PROCEEDING No. 14–1063–WHD**

United States Bankruptcy Court, N.D. Georgia, Newnan Division.

Signed 08/02/2016

Grant E. McBride, Megan M. Pearson, Orion Webb, Smith Welch Webb & White, LLC, McDonough, GA, for Plaintiff.

James R. Marshall, Atlanta, GA, for Defendant.

## IN PROCEEDINGS UNDER CHAPTER 7 OF THE BANKRUPTCY CODE

### ORDER

W. Homer Drake, U.S. Bankruptcy Court Judge

In this adversary proceeding, Patriot Fire Protection, Inc. (hereinafter "Patri-

ot") contests the dischargeability of a debt owed to it by Freemon E. Fuller (hereinafter the "Debtor") and objects to the Debtor's receipt of a discharge. These matters constitute core proceedings, *see* 28 U.S.C. § 157(b)(2)(I), (J), over which this Court has subject matter jurisdiction, *see* 28 U.S.C. §§ 157(a), 1334. This proceeding came on for trial on June 28, 2016.

### The Debtor's Request to Withdraw Admissions

Before delving into the findings of fact and conclusions of law regarding the substantive issues of this proceeding, the Court must address an oral Motion to Withdraw Admissions made at the beginning of the trial.

At the outset of the presentation of its case, Patriot moved to introduce thirty-three exhibits it had prepared for use at the trial. The Debtor made no opposition to the tender of these exhibits, so they were accepted without objection. Once the exhibits had been tendered, Patriot directed the Court's attention to Trial Exhibit 27, Creditor's First Request for Admissions to Debtor. The request asked for very condemnatory admissions from the Debtor, including "8. Admit that you purposefully and maliciously directly competed with Patriot Fire, and solicited Patriot Fire's clients to benefit yourself at the expense of Patriot Fire," and "9. Admit that you transferred property to your wife with intent to hinder, delay, or defraud creditors." (Req. for Admissions, Trial Exh. 27, at 5). According to the certificate of service, Patriot had served this request for admissions on the Debtor on April 20, 2015. (*Id.* at 7). At trial, Patriot asserted that it had never received a response to these requests.[1] Patriot argued that the

---

1. Indeed, the record in this case shows that on May 26, 2015, Patriot filed a Motion to Extend the Discovery Period, requesting a

sixty-day extension because the Debtor had

Debtor's failure to respond to the discovery request constituted admissions of the statements contained in it. Relying on these admissions, Patriot moved for judgment as a matter of law. In response, the Debtor, who appeared to have been unaware that any requests for admission had been served, asked that the Court allow him to withdraw the admissions. The Court took the matter under advisement, and the trial proceeded. Having now had the opportunity to review the law and consider the parties' arguments, the Court concludes as follows concerning the Debtor's request to withdraw his admissions.[2]

Federal Rule of Civil Procedure 36, incorporated into adversary proceedings in Bankruptcy by Federal Rule of Bankruptcy Procedure 7036, provides that "[a] matter [in a request for admission] is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." FED. R. CIV. P. 36(a)(3); *see also* FED. R. BANKR. P. 7036. However, the Rule also provides that a court may allow a party to withdraw or amend its admissions. *See* FED. R. CIV. P. 36(b). A court may permit the withdrawal or amendment of admissions if two conditions are satisfied: (1) withdrawal or amendment will "promote the presentation of the merits of the action"; and (2) "the court is not persuaded that it would prejudice the requesting party in maintaining or defending on the merits." *Id.* A court should limit its analysis to these two conditions only. *See Perez v. Miami–Dade Cnty.*, 297 F.3d 1255, 1265 (11th Cir. 2002); *accord Jones v. Tauber &*

*Balser, P.C.*, 503 B.R. 162, 175 (N.D. Ga. 2013).

The first condition "is satisfied when upholding the admissions would practically eliminate any presentation of the merits of the case." *Perez*, 297 F.3d at 1266 (internal quotation marks omitted) (quoting *Hadley v. United States*, 45 F.3d 1345, 1348 (9th Cir. 1995)). Its purpose is "to encourage resolution of disputes over material facts on the merits, rather than by default." *Whitaker v. Annamalai (In re Hindu Temple and Cmty. Ctr. of Ga.)*, 2012 WL 10739278, at *3 (Bankr. N.D. Ga. Jan. 6, 2012) (Massey, J.).

The second condition is satisfied when the party who obtained the admission is able to demonstrate that allowing the withdrawal will prejudice its ability to make or defend its case. *See Eckell v. Borbidge*, 114 B.R. 63, 66 (E.D. Penn. 1990). For example, a party can show prejudice where the withdrawal of the admissions would result in "the sudden need to obtain evidence with respect to the questions previously answered by the admissions." *Jones*, 503 B.R. at 175 (quoting *Smith v. First Nat'l Bank of Atlanta*, 837 F.2d 1575, 1578 (11th Cir. 1988)). In the same vein, "a court is more likely to find prejudice when a party seeks to withdraw its admissions once trial has already begun." *See Perez*, 297 F.3d at 1266–67.

In the instant case, Patriot served the request for admissions on the Debtor on April 20, 2015. In order to avoid admitting the statements by default, the Debtor was required to respond by May 20, 2015, which he did not do. Therefore, the statements are admitted. What the Court must

---

not replied to any of Patriot's discovery requests. (*See* Doc. No. 9, at 3–4).

**2.** As the Court is issuing this Order in light of all of the evidence, both contained in the record and presented at the trial, it will make no ruling on Patriot's Motion for Judgment as a Matter of Law.

now decide is whether allowing the Debtor to withdraw his admissions will promote presentation of the case on the merits, and whether allowing withdrawal will prejudice Patriot.

The Court finds that allowing withdrawal of the admissions would promote the presentation of the case on the merits. The statements the Debtor is deemed to have admitted strongly support the conclusion that the debt he owes to Patriot is nondischargeable and that he is not entitled to a discharge. Thus, it would encourage a fuller presentation of the evidence if the Debtor were allowed to withdraw his admissions.

Nevertheless, to allow such a withdrawal at this stage would be highly prejudicial to Patriot. Any response to Patriot's request was due well over a year before the trial began. Patriot had planned its trial strategy around these admissions, and had included them, albeit with little indication of their importance, in its list of exhibits attached to the Consolidated Pre–Trial Order. (See Doc. No. 31, Exh. 2, at 3). The beginning of trial is simply far too late in the proceeding to request that admissions such as these be withdrawn.[3] Therefore, because withdrawing the admissions would be highly prejudicial to Patriot, the Debtor's oral Motion to Withdraw Admissions is hereby **DENIED.**

Nevertheless, the Court notes that it will not treat as established the statements to which the Debtor admitted so far as they constitute conclusions of law or are contrary to the uncontested evidence in the record. See Le v. Krepps (In re Krepps), 476 B.R. 646, 649 (Bankr. S.D. Ga. 2012) ("[T]he matters set forth in the Request for Admission which are not conclusions of law are hereby deemed admitted."); cf. F.D.I.C. v. Prusia, 18 F.3d 637, 641 (8th Cir. 1994) (allowing amendment of " 'admitted' facts contrary to the actual facts"). The Court particularly notes Statement 3 of the Request for Admissions, which states, "Admit that [Patriot] was granted a motion for summary judgment for tortious interference in October, 2013, in which the Superior Court of Henry County ... determined that you had caused willful and malicious injury to [Patriot]." (Trial Exh. 27, at 4). This was plainly not the holding of the Superior Court, as evidenced by that court's Final Order and Judgment (see Trial Exh. 33) and this Court's interpretation of that order (see Order Denying Mot. for Summary Judgment, Doc. No. 19, at 10 ("As to the [Debtor], therefore, the Superior Court found that the [Debtor] breached the agreement and that the breach resulted in damages, but made no finding as to whether the [Debtor's] breach of the Agreement was also 'willful and malicious.' ")). Accordingly, Statement 3 will not be deemed established. However, the rest of the statements admitted shall be deemed established, and the facts contained in those statements shall serve as a supplement to the Court's Findings of Fact. (See Req. for Admission, Trial Exh. 27, at 3–6).

## Findings of Fact

Having concluded that the Debtor cannot withdraw his admissions, and having

---

**3.** The Court wonders, though, why Patriot has been sitting on these admissions for so long. They were not mentioned in Patriot's Motion for Summary Judgment filed on July 13, 2015. (Doc. No. 13). Nor did Patriot mention its intent to rely on these admissions at the pre-trial conference held on April 27, 2016. Instead, Patriot merely enumerated the admissions as number 29 of 36 in its list of exhibits and referenced them in citations in its Bench Brief filed the night before the trial. (See, e.g., Bench Brief, Doc. No. 35, at 5). In the interest of judicial efficiency, the Court exhorts Patriot, and other parties in similar situations, to refrain from waiting until the last minute to notify the Court that it intends to rely so heavily on admissions obtained by default.

heard the evidence presented at the trial, the Court finds as set forth below.

The Debtor was an employee of Patriot from October 1, 1999 to August 31, 2009. The Debtor was a technician whose job entailed installing and maintaining fire-safety systems. Because Patriot was a small company, the Debtor was also tasked with soliciting new clients.

During his time with Patriot, the Debtor began performing "side jobs," in which he would perform the services Patriot provided, but did so without Patriot's knowledge. Upon learning about these side jobs, Patriot had the Debtor sign a confidentiality and non-compete agreement (hereinafter the "Agreement") as a condition of continued employment. The Agreement prohibited the Debtor from soliciting business from Patriot's clients or otherwise competing with Patriot within a fifty-mile radius of Locust Grove, Georgia.

The quality of the Debtor's work declined after he was made to sign the agreement, so in August of 2009 Patriot terminated the Debtor. Shortly thereafter, the Debtor began working for Atlanta Area Extinguisher Services (hereinafter "AAES"). While working for AAES, the Debtor solicited business and performed tasks for clients he had serviced while working for Patriot, activity that was in violation of the non-compete agreement. James Johnson, the President and Owner of Patriot, estimated that approximately three former clients were contacted by the Debtor every week. This placed a strain on Patriot's business because its clients required the fire-inspection services Patriot provided only once or twice a year. Because the Debtor was performing these services on former Patriot clients or clients within Patriot's area, Patriot was losing this business. Patriot sent a cease and desist letter to the Debtor, but he continued to perform services in violation of the Agreement. Finally, Patriot filed a lawsuit in the Superior Court of Henry County (hereinafter the "Superior Court"), asserting a breach of contract claim (for violating the agreement) against the Debtor and a tortious interference with business claim against AAES.

In January of 2010, the Superior Court entered an order enjoining the Debtor from further contact or communications with Patriot's former clients. The Debtor did not abide by this injunction, and on March 19, 2010, the Superior Court found the Debtor in willful contempt and ordered him to pay Patriot $500.

In January of 2012, the Superior Court entered summary judgment against the Debtor, concluding that he had violated the Agreement.[4] Though it initially denied summary judgment as to AAES, the Superior Court entered summary judgment against AAES as well, after Patriot moved for reconsideration. On November 6, 2013, the Superior Court entered an order awarding Patriot $85,709.33 in damages from the Debtor and AAES jointly and severally, as well as $43,084.17 in costs and fees.

The Debtor filed his voluntary petition under Chapter 7 on August 25, 2014.[5] Prior to filing his petition, the Debtor made multiple cash deposits into his wife's bank account. (See e.g., Bank Statements from Account of Celestine Fuller, Trial Exh. 21, at 20 (showing a $4,133.63 deposit in April,

4. The judgment of the Superior Court, and the findings of fact therein, are binding on this Court by application of the doctrine of collateral estoppel. (See Order Denying Motion for Summary Judgment, Doc. No. 19, at 9–10).

5. Griffin E. Howell, III was appointed as Chapter 7 Trustee. He has submitted his report of no distribution, but the case remains open pending the resolution of this adversary proceeding.

2014)). Additionally, in his Schedules and Statement of Financial Affairs filed with his petition, the Debtor failed to disclose several pieces of information, most notably: (1) a ring, which the Debtor valued at $4,000 (*see* 2004 Exam of Freemon Fuller, Trial Exh. 12, at 26:8–9); (2) the full extent of his non-employment income prior to filing (*see* Bank Statements, Trial Exh. 20); (3) multiple bank accounts (*see e.g.*, Bank Statements Trial Exh. 18); (4) his wife's bank account, where his employment compensation has gone since 2009 (*see* 2004 Exam of Freemon Fuller, Trial Exh. 12, at 44:5–14); (5) two payments made to creditors from his wife's account prior to the filing of the petition (*see* Cancelled Checks, Trial Exh. 22, at 4, 6); and (6) that he had a business known as "All In One Fire Protection" (*see* 2004 Exam of Freemon Fuller, Trial Exh. 12, at 16:20–17:11).

### Conclusions of Law

Patriot asserts three causes of action in this proceeding: (A) the debt arising from the Superior Court's judgment should be excepted from discharge pursuant to § 523(a)(6); (B) the Debtor's discharge should be denied pursuant to § 727(a)(2)(A); and (C) the Debtor's discharge should be denied pursuant to § 727(a)(4). The Court will address each of these in turn, but first there are a few guiding principles concerning dischargeability and objections to discharge that it is important to consider.

■ "A central purpose of the [Bankruptcy] Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy 'a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.'" *Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (quoting *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 78 L.Ed. 1230 (1934)). This "fresh start," however, is only available "to the honest but unfortunate debtor." *Id.* (internal quotation marks omitted); *see also E. Diversified Distributors, Inc. v. Matus (In re Matus)*, 303 B.R. 660, 670 (Bankr. N.D. Ga. 2004) (Mullins, J.) ("Though the Bankruptcy Code provides most debtors with a fresh start, the Code prevents dishonest debtors from improperly using it as a shield."). Section 523, which "except[s] certain debts from discharge," and § 727(a), which "may be utilized to deny a discharge to dishonest debtors," are two of the sections of the Code ensuring that the benefits of a discharge are experienced only by those debtors Congress, and by extension the people of this Republic, have deemed worthy of the privilege. *See* 11 U.S.C. §§ 523, 727(a).

■ In applying the exceptions to discharge under § 523 and the grounds for denial of discharge under § 727(a), the courts have supported the fresh start by construing those sections in favor of the debtor. *See Moyer v. Geer (In re Geer)*, 522 B.R. 365, 385 (Bankr. N.D. Ga. 2014) (Hagenau, J.); *Williams v. Williams (In re Williams)*, 2013 WL 6017464, at *6 (Bankr. M.D. Ga. Nov. 12, 2013); *In re Matus*, 303 B.R. at 671. Furthermore, a creditor or other plaintiff must initially prove the application of the exception or its objection by a preponderance of the evidence. *See Kane v. Stewart Tilghman Fox & Bianchi, P.A. (In re Kane)*, 755 F.3d 1285, 1293 (11th Cir. 2014); *Jennings v. Maxfield (In re Jennings)*, 533 F.3d 1333, 1339 (11th Cir. 2008); *In re Williams*, 2013 WL 6017464, at *6. However, once the plaintiff has made this showing, "the debtor has the ultimate burden of persuasion, demonstrating that he is entitled to a discharge despite the evidence presented by the objecting party." *In re Matus*, 303 B.R. at 672. With these guiding

principles in mind, the Court turns to Patriot's claims.

## A. § 523(a)(6)

 Section 523(a)(6) excepts from discharge debts "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). "The word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). This means that the debtor must have desired the injury giving rise to the debt, either subjectively or because there is "no other plausible inference." *Atlanta Contract Glazing, Inc. v. Swofford (In re Swofford)*, 2008 WL 7842040, at *2 (Bankr. N.D. Ga. Dec. 29, 2008) (Brizendine, J.) (quoting *Henderson v. Woolley (In re Woolley)*, 288 B.R. 294, 302 (Bankr. S.D. Ga. 2001)). If there was a substantial certainty that the debtor's conduct would cause the injury, that will suffice. *See In re Kane*, 755 F.3d at 1293. An act is malicious if it is "wrongful and without just cause or excessive." *Id.* at 1294.

 Here, the debt owed to Patriot as a result of the Superior Court's judgment is nondischargeable as a debt for willful and malicious injury. Although, as this Court noted, the Superior Court made no finding concerning whether the Debtor acted willfully and maliciously in violating the Agreement, ample evidence was presented to this Court to conclude that he did so. Initially, the admissions establish that the Debtor "purposefully and maliciously competed with [Patriot]." (Req. for Admission, Trial Exh. 27, at 5). But even beyond the admissions, the facts presented at trial establish that the debt is excepted from discharge. First, the Debtor's conduct was malicious—there was no just cause for him to breach the Agreement, and to do so was wrongful. Second, the Debtor acted with the substantial certainty that his conduct would cause injury to Patriot. The Debtor had worked in the fire-protection industry for nearly ten years before the events at issue here, and therefore would have understood how precious each client is to a business engaged in that industry, and how poaching clients necessarily caused harm to Patriot in that the client would no longer need Patriot's services.

Additionally, the Debtor received a cease and desist letter from Patriot before the lawsuit was filed, emphasizing that from that point he was on even greater notice that his actions were likely to harm Patriot. Thus, the Debtor's actions were done with substantial certainty that they would harm Patriot by reducing Patriot's client pool.

Faced with all of these indicia that his actions were causing Patriot harm, the Debtor, nevertheless, persisted in violating the agreement. There is no other plausible inference than that the Debtor had a substantial certainty that his conduct would cause injury, and yet he acted anyway. As this conduct was willful and malicious, the resultant debt, represented by the judgment of the Superior Court, is excepted from discharge pursuant to § 523(a)(6).

## B. 727(a)(2)(A)

 While § 523(a) lists particular debts that are excepted from discharge, § 727 provides scenarios in which a debtor's conduct disqualifies him from receiving a discharge at all. Here, Patriot relies on two subsections of § 727–(a)(2)(A) and (a)(4)—as grounds for denying the Debtor his discharge. The Court will address both subsections, and notes that "[a] finding against the [Debtor] under any single subsection...is sufficient to deny him a dis-

**890**

charge." *Protos v. Silver (In re Protos)*, 322 Fed.Appx. 930, 932–32 (11th Cir. 2009) (per curiam).

Section 727(a)(2) denies a discharge to debtors who, "with intent to hinder, delay, or defraud a creditor" have transferred "(A) property of the debtor, within one year of the filing of the petition." 11 U.S.C. § 727(a)(2). The statute's requirements break down into four elements: there must have been (1) a transfer (2) of property of the debtor, (3) within one year of the filing of the petition, (4) made with fraudulent intent. *In re Williams*, 2013 WL 6017464, at *9; *see also Gebhardt v. McKeever (In re McKeever)*, 550 B.R. 623, 635 (Bankr. N.D. Ga. 2016) (Hagenau, J.) ("[T]o deny a debtor a discharge under this section, a plaintiff must show the debtor transferred . . . property, within the requisite time period, and had the requisite intent. . . .").

"Transfer" is broadly defined in the Code to include "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing or parting with—(i) property; or (ii) an interest in property." *In re Mckeever*, 550 B.R. at 635 (quoting 11 U.S.C. § 101(54)). Concerning the intent element, actual intent is required, but it may be shown by reference to all of the circumstances. *Id.* at 636. In evaluating those circumstances, courts are encouraged to consider the traditional "badges of fraud," including lack of consideration, a close relationship between the debtor and the transferee, and "the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors." HON. W. HOMER DRAKE, JR. & KAREN D. VISSER, BANKRUPTCY PRACTICE FOR THE GENERAL PRACTITIONER § 11:19 (3rd ed. 2011) (quoting *Soza v. Hill (In re Soza)*, 542 F.3d 1060, 1067 (5th Cir. 2008)).

In the instant case, the evidence shows that the Debtor was depositing his money into his wife's bank account within a year of the filing of his petition. (*See* Bank Statements from Account of Celestine Fuller, Trial Exh. 21). These deposits were of the Debtor's property; they constitute transfers within the meaning of the Code; and they were made within one year of the filing of the petition. Furthermore, per Patriot's unanswered discovery request, the Debtor has admitted to "transferr[ing] property to [his] wife with intent to hinder, delay, or defraud creditors." (Trial Exh. 27, at 5). Therefore, the Debtor's discharge will be denied pursuant to § 727(a)(2)(A).

## C. § 727(a)(4)

Patriot has also asserted an objection to the Debtor's discharge under § 727(a)(4). That section prohibits a debtor from receiving a discharge if he has "knowingly and fraudulently, in or in connection with the case—(A) made a false oath or account." 11 U.S.C. § 727(a)(4). "This provision serves to recognize a basic concept—that 'the successful functioning of the bankruptcy [process] hinges both upon the [debtor's] veracity and his willingness to make a full disclosure.'" *Rainer v. Stump (In re Stump)*, 1996 Bankr. LEXIS 1920 (Bankr. N.D. Ga. Sept. 30, 1996) (Drake, J.) (first alteration in original) (quoting *In re Mascolo*, 505 F.2d 274, 278 (1st Cir. 1974)); *accord Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 618 (11th Cir. 1984) ("The veracity of the [debtor's] statements is essential to the successful administration of the Bankruptcy Act."). When considered in conjunction with the Debtor's duties to disclose, this provision emphasizes the point that "the discharge is not free, and one of the costs is the debtor's cooperation, including the accurate and full completion of the schedules and statement of financial affairs." *In*

*re Matus*, 303 B.R. at 676; *see also* 11 U.S.C. § 521. With these principles in mind, courts have consistently held that deliberate omissions from the debtor's schedules constitute "a false oath or account." *See, e.g., In re Matus*, 303 B.R. at 676–77 ("[D]eliberate omissions from schedules or the statement of financial affairs may also constitute false oaths or accounts."); *Shinhan Bank Am. (Inc.) v. Kim (In re Kim)*, 2011 WL 5902461, at *5 (Bankr. N.D. Ga. Oct. 27, 2011) (Sacca, J.) ("Fraudulent and material omissions from a debtor's Schedules and [Statement of Financial Affairs], which are sworn statements, justify denial of discharge under this section, as well.").

■■■■ To warrant denial of the debtor's discharge, the false oath or account must be "material." *See In re Geer*, 522 B.R. at 387 ("[T]he plaintiff must show there was a false oath, that it was material, and that it was made knowingly and fraudulently."); *In re Matus*, 303 B.R. at 676 ("The plaintiff bears the burden of proving that the false oath or account was made knowingly and fraudulently about a material matter."). "Material" in this context has a broad definition: a false statement is material "if it bears a relationship to the [debtor's] business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *In re Chalik*, 748 F.2d at 618; *accord In re Kim*, 2011 WL 5902461, at *6. This broad definition promotes complete disclosure by the debtor, who is not allowed "to decide what is and is not relevant." *See In re Matus*, 303 B.R. at 675 (quoting *Jensen v. Brooks (In re Brooks)*, 278 B.R. 563, 566 (Bankr. M.D. Fla. 2002)). Instead, creditors must be allowed "to judge for themselves what will benefit, and what will prejudice, them." *Id.* (quoting *In re Chalik*, 748 F.2d at 618). For this reason, even "false oaths regarding worthless assets may bar the discharge of debts." *See In re Protos*, 322 Fed.Appx.

at 934; *see also In re Chalik*, 748 F.2d at 618 ("The recalcitrant debtor may not escape a...denial of discharge by asserting that the admittedly omitted...information concerned a worthless business relationship or holding; such a defense is specious."); DRAKE & VISSER, *supra*, at § 11:21 ("The fact that the information omitted involved property with no or little value does not mean that the omission of the asset was not material.").

■■■■ While the value of a concealed asset does not bear on materiality, it may affect a finding on intent. *See In re Williams*, 2013 WL 6017464, at *7. This observation is relevant since the intent prong of § 727(a)(4), as was the case in the test under subsection (a)(2), requires actual intent, which may be inferred by reference to all of the circumstances. *In re Geer*, 522 B.R. at 387–88. In particular, evidence of a series of concealments or false statements strongly supports an inference that the debtor failed to disclose assets or other information with fraudulent intent, rather than as a mere oversight. *See In re Protos*, 322 Fed.Appx. at 933 ("While a single, isolated instance of nondisclosure or improper disclosure *may* not support a finding of fraudulent intent, we find that the repeated nature of non-disclosures made by the [Debtor]...supports the bankruptcy court's finding of fraudulent intent."); *In re Matus*, 303 B.R. at 677–78. While "mistake, inadvertence, or honest reliance on advice of counsel will not provide a basis to deny a discharge," there are situations in which "the errors are too numerous to have been inadvertent," suggesting that the debtor has "a reckless indifference to the truth." DRAKE & VISSER, *supra*, at § 11:21.

■■■ Finally, the Court notes that a debtor may not redeem himself, and become entitled to a discharge, by later revealing information he should have dis-

892

closed initially. *See In re Stump*, 1996 Bankr. LEXIS 1920, at \*8–9 ("Furthermore, a debtor's subsequent efforts to amend will not cleanse the original statements if they were tainted or fraudulent.").

 Here, the Debtor's discharge will be denied. The evidence presented at the trial established multiple omissions from the Debtor's Schedules and Statement of Financial Affairs. Among the Debtors omissions were that he had several bank accounts closed within a year of the filing, that he owned a ring that he himself valued at $4,000, that he made two payments to creditors within ninety days of the filing of the petition, and that he had attempted to start a business called "All In One Fire Protection." Furthermore, the Debtor did not disclose all of his non-employment income. These all fall well within the definition of "material" stated above. While these omissions may have related to assets that proved to be unrecoverable or of no value to the estate, the Debtor nevertheless should have disclosed them. Though the Debtor asserts that the omissions were inadvertent and that everything was eventually revealed, the Court finds that assertion unworthy of credit. The pattern and extent of the omissions in the Debtor's filings evidence an intent to obfuscate the Bankruptcy process and hinder creditors. Therefore, the Debtor's discharge will be denied pursuant to § 727(a)(4).

### Conclusion

In accordance with the foregoing, it is hereby **ORDERED** that the debt owed by the Debtor to Patriot is excepted from discharge in its entirety; and

**IT IS FURTHER ORDERED** that the Debtor, Freemon E. Fuller, shall not receive a discharge in his Bankruptcy case, which is Case No. 14–11888–WHD.

Judgment will be entered in accordance with this Order.

The Clerk is **DIRECTED** to serve this Order on Patriot, the Debtor, their respective counsel, the Chapter 7 Trustee, and the United States Trustee.

**IT IS ORDERED.**